UNITED STATES DISTRICT COURT-DISTRICT OF NEW HAMPSHIRE
[via transfer designation to UNITED STATES DISTRICT COURT- DISTRICT OF MAINE]
CIVIL ACTION NO: 1:24-cv-00360
ANDRE BISASOR, et. al. v. NEW HAMPSHIRE JUDICIAL BRANCH, et. al

## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND STAY OF NEW HAMPSHIRE SUPREME COURT PROCEEDINGS

1. Plaintiffs Andre Bisasor and Natalie Anderson ("Plaintiffs"), proceeding pro se, hereby move this Court for an emergency Temporary Restraining Order ("TRO") and stay of proceedings in the New Hampshire Supreme Court ("NHSC") Case No. 2021-0604, Natalie Anderson v. New Hampshire Professional Conduct Committee et. al. This motion is filed pursuant to Federal Rule of Civil Procedure 65(b) and Local Rule 65.1.

2. The Plaintiffs respectfully move this Honorable Court to stay all proceedings in this matter pending resolution of a motion for preliminary injunction filed and transferred to the United States District Court for the District of Maine; and hereby move this Court to stay all proceedings in their pending appeals before the New Hampshire Supreme Court (Case Nos. 2023-0520 and 2021-0604) pending resolution of the federal complaint and motion for preliminary injunction filed in Federal Court.

3. Plaintiffs have filed a complaint and motion for preliminary injunction in Federal Court seeking relief from violations of their rights under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, 42 U.S.C. § 1983, and the U.S. Constitution by the New Hampshire Supreme Court and related defendants.

4. Plaintiffs respectfully request that this Court:
   a. Issue a TRO enjoining the NHSC from enforcing its January 10, 2025 order in Case No. 2021-0604, which set a deadline of January 27, 2025 for filing a motion for reconsideration;
   b. Stay all proceedings in NHSC Case No. 2021-0604 pending resolution of Plaintiffs' claims in this federal action;
   c. Order the NHSC to maintain the status quo and refrain from taking any further action in Case No. 2021-0604 until this Court has had an opportunity to fully consider Plaintiffs' claims;
   d. Enjoin the New Hampshire Attorney General's Office and the New Hampshire Attorney Discipline Office from destroying any records related to Plaintiffs' right-to-know requests that are the subject of the underlying case and appeal;
   e. Grant any other relief this Court deems just and proper to preserve Plaintiffs' rights and prevent irreparable harm.

5. Plaintiffs further request that this Court issue a ruling on this motion by or before close of business on Monday, January 27, 2025, as the requested relief must be implemented by Tuesday, January 28, 2025, at the opening of the New Hampshire Supreme Court at 8.30am.

6. In support of this motion, Plaintiffs state as follows:

## I. INTRODUCTION

7. This case presents an urgent matter of federal civil rights violations perpetrated by the NHSC and other state actors against Plaintiffs, who are individuals with disabilities seeking to vindicate their rights under the Americans with Disabilities Act ("ADA"),the Rehabilitation Act, and the U.S. Constitution. The NHSC has repeatedly denied Plaintiffs' requests for reasonable accommodations, retaliated against them for asserting their rights, and engaged in a pattern of discriminatory conduct that threatens to deprive Plaintiffs of meaningful access to the courts.

8. Recent orders by the NHSC represents the culmination of a series of actions that have systematically deprived Plaintiffs of their federal rights. By denying Plaintiffs' requests for accommodations, the NHSC has effectively foreclosed Plaintiffs' ability to meaningfully participate in the appellate process.

9. Moreover, the impending destruction of records by the New Hampshire Attorney General's Office and Attorney Discipline Office threatens to permanently deprive Plaintiffs of their right to access public information and pursue their right-to-know claims

10. This Court's immediate intervention is necessary to prevent irreparable harm and preserve Plaintiffs' fundamental rights. The urgency of this matter is underscored by the imminent January 27, 2025 deadline and the threat of record destruction, which would irreparably harm Plaintiffs' ability to pursue their claims and vindicate their rights.

## II. PROCEDURAL POSTURE OF THIS CASE

11. It should be noted that this federal court case initially experienced an administrative conundrum where all justices of the NH federal court were recused. This added a complication to the resolution of this federal case.

12. The federal court has issued multiple orders for transfer and recusals, indicating the complexity and sensitivity of the issues involved as follows:

13. After filing the case, the federal court of Massachusetts first transferred the action to the federal court of New Hampshire. Chief Justice of the Federal Court of Massachusetts, Dennis Saylor, ostensibly recognized the case was worthy of proper adjudication and did not dismiss or challenge any of the claims after review but instead issued a transfer order.

14. After transfer from the federal court of Massachusetts to the federal court of New Hampshire, all justices of the NH federal court recused themselves.

15. The action was recently transferred to the federal court of Maine. This occurred on or about December 2, 2024. The case is now pending in the Federal District Court of Maine.

16. The case was in abeyance or hiatus because of this situation. Therefore, no filings could have been made in the case while these transfers and recusals were being effected (i.e., there was no one who could preside over the case or rule on motions in the case because of the complete recusal of the NH federal court).

17. This complicating delay prevented the earlier movement of or progress of and/or resolution of the case. NB: Earlier progress of the case could have seen a response by the defendants or an initial hearing etc.

18. Also, on January 8, 2025, after the holiday period and after receiving the transfer orders by mail, plaintiffs filed a motion for e-filing access along with a motion for an extension of time to serve process on defendants, having not received the summons for service from the court, and also seeking clarification thereon. Although the court ruled on and granted the motion to extend time on January 15, 2025, there was no ruling made on the motion for e-filing access. After awaiting ruling on the e-filing access and seeing that none was forthcoming, the plaintiffs eventually called the court to inquire about this and, after investigation, were told that there was an error or oversight by the court as the motion for e-filing access was apparently inadvertently attached to the back of the motion to extend time and thus was not ruled on. Thus, while the extension was granted on January 15, 2025, the e-filing motion was overlooked and not ruled on. This oversight caused difficulties as follows:
    a) Plaintiffs reside in Massachusetts, hours away from the court.
    b) Plaintiff has disabilities that impede the ability to physically come to the court.
    c) Plaintiff could not continue to arrange for hand-delivery of filings.

19. Also, without e-filing access, plaintiffs could not have e-filed the emergency motion prior to today[1], which has ostensibly prejudiced the plaintiffs, due to no fault of their own but due to the oversight or error of the court.

20. However, on the late afternoon of Friday January 24, 2025, just before the close of business, the court finally ruled on and granted the motion for e-filing access and the IT department initiated efiling access for the plaintiffs at or around the close of business.

21. This morning is the first chance that the plaintiffs have to e-file the emergency motion so that the court can review and rule on it. Due to the above circumstances and the time sensitivity of the matter, the plaintiffs request expedited/emergency treatment of and ruling on this motion so that the plaintiffs can know if it has been granted before or by the close of business today.

22. The plaintiffs, having alleged several claims, including violations of their constitutional rights pursuant to 42 U.S.C. § 1983 and a violation of the Americans with Disabilities Act, now move for an emergency temporary restraining order staying New Hampshire Supreme Court proceedings in the particular case (# 2021-0604).

## III. BACKGROUND

23. On or about October 15, 2024, the Plaintiffs filed a complaint and motion for preliminary injunction in the United States District Court for the District of Massachusetts against the New Hampshire Judicial Branch, New Hampshire Supreme Court, and various other defendants (hereinafter "federal action").[2]

---

[1] This is further to be noted in light of the recent NHSC orders and recent refusal of the AG office to affirm that it won't destroy records, etc, giving rise to further sense of imminent harm.

[2] See motion for preliminary injunction filed in this case which is incorporated herein by reference.

24. This pending federal action raises substantial claims under the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, 42 U.S.C. § 1983, and the U.S. Constitution that directly impact the proceedings before the New Hampshire Supreme Court.

25. The federal action seeks, inter alia, to enjoin the New Hampshire Supreme Court, the New Hampshire Judicial Branch, and various justices and state court officials, from:
   a) Violating Plaintiffs' rights under the ADA, Section 504 of the Rehabilitation Act, 42 U.S.C. § 1983, the Due Process Clause, and the Equal Protection Clause of the Fourteenth Amendment;
   b) Retaliating against Plaintiffs for raising concerns about discrimination based on race and/or disability;
   c) Discriminating against Plaintiffs based on race and/or disability;
   d) Subjecting Plaintiffs to arbitrary and capricious standards and violating Plaintiffs' right to due process and equal treatment before the law;
   e) Subjecting plaintiffs to biased justices who fail to recuse for bias and conflicts of interest;
   f) Denying Plaintiffs' requests for reasonable accommodations under the ADA;
   g) Dismissing or Denying Plaintiffs appeals (Case No. 2023-0520 and Case No. 2021-0604) based on denials of ADA accommodation requests.
   h) Continuing to adjudicate Plaintiffs' appeals given demonstrated bias and conflicts of interest;
   i) Imposing prior restraints on Plaintiffs' First Amendment rights.

26. The federal complaint and motion for preliminary injunction present serious allegations of violations of plaintiffs' federal rights, including: a) Denial of reasonable accommodations under the ADA, b) Violations of due process and equal protection under the Fourteenth Amendment, c) Retaliation and discrimination in violation of federal law, d) Imposition of prior restraints on First Amendment rights. These claims strike at the heart of the judicial process and the integrity of the proceedings before this Court. The federal action seeks to enjoin this Court from violating plaintiffs' rights under federal law.

27. Furthermore, the complaint alleges, among other things, that the plaintiffs were denied the opportunity to provide commentary on proposed changes to the New Hampshire Supreme Court rules, that the ADO and PCC improperly refused to accommodate their request for an electronic copy of certain public records pertaining to an attorney who had been subject to disciplinary proceedings more than once, and that the New Hampshire Supreme Court unlawfully denied their ADA request involving extension of the deadline to submit a filing in a pending case.

28. Allowing the New Hampshire Supreme Court proceedings to continue while this federal action is pending would risk irreparable harm to Plaintiffs' federal rights.

29. A stay of the state court proceedings is necessary to preserve the Federal Court's ability to grant effective relief if Plaintiffs prevail on their federal claims.

30. The balance of equities and public interest favor staying the state court proceedings to allow consideration of Plaintiffs' motion for immediate injunctive relief and motion for preliminary injunction.

31. In similar situations, the court has allowed a stay until the federal court rules on the motion for immediate injunctive relief. This court should enter a temporary stay in these appeals.

32. The court should stay these proceedings because a federal court action with a motion for preliminary injunction has been filed against the New Hampshire Judicial Branch, New Hampshire Supreme Court, among various defendants.

33. Because a federal injunctive relief action has been filed against the New Hampshire Supreme Court, then this federal court ought to be able to rule on the motion for preliminary injunction before the NHSC proceeds any further with this matter, particularly as it relates to the implicated issues as outlined below.

## IV. FACTUAL GROUNDS

34. Plaintiffs are individuals with disabilities as defined by the ADA. They are currently parties to Case No. 2021-0604 pending before the NHSC, which involves important right-to-know issues and constitutional questions of public access to court records. This appeal stems from a lower court decision dismissing Plaintiffs' claims seeking access to public records from the New Hampshire Professional Conduct Committee (PCC) and Attorney Discipline Office (ADO).

35. Throughout the course of the NHSC proceedings, Plaintiffs have made multiple requests for reasonable accommodations under the ADA, including extensions of time to file briefs and other documents due to their

medical conditions. These requests have been supported by medical documentation and sworn affidavits attesting to Plaintiffs' qualifying disabilities.

36. Despite the clear mandates of the ADA and Plaintiffs' documented needs, the NHSC has consistently denied or ignored these accommodation requests. The court has imposed unreasonable deadlines, refused to allow confidential submission of medical information, and threatened to disclose Plaintiffs' private medical data to adverse parties. These actions have not only violated Plaintiffs' rights under the ADA but have also infringed upon their constitutional rights to due process, equal protection, and access to the courts.

37. The January 10, 2025 order represents the latest in this pattern of discriminatory conduct. By denying Plaintiffs' requests to file their ADA-related motions under seal and ex parte, the NHSC has forced Plaintiffs into an untenable position: either withdraw their accommodation requests or risk the disclosure of sensitive medical information to hostile parties. Moreover, the court's refusal to grant a meaningful extension of time for filing a motion for reconsideration fails to account for Plaintiffs' documented disabilities and effectively denies them the opportunity to fully present their case.

38. Adding to the urgency of this matter is the imminent threat of record destruction by the New Hampshire Attorney General's Office (AG Office) and Attorney Discipline Office (ADO). As evidenced by email correspondence with Assistant Attorney General Anthony Galdieri (attached as Exhibit 1), these agencies intend to destroy records related to Plaintiffs' right-to-know requests immediately following the NHSC's affirmation of the lower court's decision. This destruction would irreparably harm Plaintiffs' ability to pursue their claims and would constitute a violation of their constitutional rights to access public information and petition the government for redress of grievances.

## V. LEGAL STANDARD

39. To obtain a TRO, Plaintiffs must demonstrate: "(1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) a balance of equities in the plaintiff's favor, and (4) service of the public interest" (Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011)). The First Circuit has described this as a "sliding scale" approach, where a strong showing on one factor may compensate for a weaker showing on another (Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir. 1996)).

## VI. ARGUMENT
## A. Plaintiffs Are Likely to Succeed on the Merits of Their Claims

40. Plaintiffs have a strong likelihood of success on the merits of their claims under Title II of the ADA, Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983 for violations of their constitutional rights.

41. Plaintiff has alleged facts sufficient to support a finding that the New Hampshire Supreme Court has made invalid attempt to infringe upon Plaintiffs rights under the first and fourteenth amendments of the United States Constitution.

## B. Violations of the ADA and Rehabilitation Act

42. Title II of the ADA prohibits discrimination against individuals with disabilities in the services, programs, or activities of public entities, including state courts (42 U.S.C. § 12132; Tennessee v. Lane, 541 U.S. 509, 531 (2004)). The NHSC, as a public entity, is required to make reasonable modifications to policies, practices, and procedures when necessary to avoid discrimination on the basis of disability (28 C.F.R. § 35.130(b)(7)).

43. Plaintiffs have presented substantial evidence that they have qualifying disabilities under the ADA and that the NHSC has failed to provide reasonable accommodations. The court's repeated denials of extension requests, refusal to allow confidential submission of medical information, and imposition of unreasonable deadlines constitute a failure to make reasonable modifications as required by law.

44. The NHSC's actions mirror those found to violate the ADA in Tennessee v. Lane, where the Supreme Court held that Title II of the ADA validly abrogates state sovereign immunity in the context of access to courts. As in Lane, the NHSC's conduct has effectively denied Plaintiffs the opportunity to participate in the judicial process on an equal basis with others.

45. In Duvall v. County of Kitsap, the Ninth Circuit held that a court's failure to provide reasonable accommodations to a litigant with disabilities violated the ADA (260 F.3d 1124, 1138 (9th Cir. 2001)). Similarly, in Popovich v. Cuyahoga County Court of Common Pleas, the Sixth Circuit found that a state court's failure to accommodate a litigant's hearing impairment violated Title II of the ADA (276 F.3d 808, 816 (6th Cir.

4

2002)). These cases demonstrate that courts have consistently recognized the obligation of state courts to provide reasonable accommodations under the ADA.

46. NB: As in the above cases, the defendants in this case fell short of the standard required by the ADA. There are triable material facts at issue in this case. Also, the defendants have been either deliberately indifferent to the plaintiffs' ADA rights or intentionally discriminatory against the plaintiffs as defined by the ADA.

### C. Constitutional Violations

47. The NHSC's actions also violate Plaintiffs' constitutional rights to due process and equal protection under the Fourteenth Amendment. The Supreme Court has long recognized that access to the courts is a fundamental right protected by the Constitution (Bounds v. Smith, 430 U.S. 817, 821 (1977)). By imposing unreasonable deadlines and denying accommodations, the NHSC has deprived Plaintiffs of a meaningful opportunity to be heard, a core component of due process (Mathews v. Eldridge, 424 U.S. 319, 333 (1976)).

48. Moreover, the NHSC's disparate treatment of Plaintiffs, as individuals with disabilities seeking accommodations, raises serious equal protection concerns. The court's actions evince a pattern of discrimination that goes beyond mere error and suggests intentional bias against Plaintiffs based on their disabilities and pro se status. In Village of Willowbrook v. Olech, the Supreme Court recognized that a "class of one" may bring an equal protection claim where the plaintiff alleges that they have been intentionally treated differently from others similarly situated without a rational basis for the difference in treatment (528 U.S. 562, 564 (2000)).

### D. First Amendment Violations

49. The NHSC's conduct also implicates Plaintiffs' First Amendment rights to petition the government for redress of grievances and to access public information. The underlying appeal involves important public access issues, and the NHSC's actions have effectively silenced Plaintiffs' ability to pursue these claims. This raises serious concerns about prior restraint and the chilling of protected speech (Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976)).

50. Furthermore, the impending destruction of records by the Attorney General's Office and Attorney Discipline Office threatens to permanently deprive Plaintiffs of their right to access public information, a right that is fundamental to the First Amendment (Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 576 (1980)). The Supreme Court has recognized that the right of access to public records is essential to the public's ability to participate in and monitor the functioning of our democratic society (Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 604-05 (1982)).

### E. Imminent and irreparable injury

51. Plaintiff is suffering, and will continue to suffer irreparable injury by the New Hampshire Supreme Court and the effect of its rulings which adversely affect plaintiff in pending litigation.

52. Plaintiff will suffer a great, immediate, and irreparable loss of constitutional rights inter alia, substantive, and procedural due process rights in the NHSC, absent a temporary stay. This injury is thus imminent.

### E. Plaintiffs Will Suffer Irreparable Harm Absent Immediate Relief

53. Without this Court's intervention, Plaintiffs face imminent and irreparable harm. The January 27, 2025 deadline for filing a motion for reconsideration is expiring after today, and Plaintiffs' disabilities make it impossible to meet this deadline without accommodations. If forced to proceed under these circumstances, Plaintiffs will be permanently deprived of their right to meaningful appellate review.

54. The imminent destruction of records by the Attorney General's Office and Attorney Discipline Office presents an additional and urgent threat of irreparable harm. As evidenced by the email correspondence with Assistant Attorney General Anthony Galdieri, these agencies intend to destroy records related to Plaintiffs' right-to-know requests immediately following the NHSC's affirmation of the lower court's decision. This destruction would permanently deprive Plaintiffs of their ability to pursue their right-to-know claims and would constitute an irreversible loss of public information.

55. Courts have consistently held that the denial of constitutional rights, even for minimal periods of time, constitutes irreparable injury (Elrod v. Burns, 427 U.S. 347, 373 (1976)). Here, Plaintiffs face not only the loss of their constitutional rights but also the permanent dismissal/denial of their appeal and the forever destruction of the public records. These harms cannot be adequately remedied through monetary damages and require immediate injunctive relief.

56. In Chambers v. NASCO, Inc., the Supreme Court recognized that courts have inherent power to prevent the destruction of relevant evidence (501 U.S. 32, 44-45 (1991)). The destruction of these records would not only harm Plaintiffs but would also undermine the integrity of the judicial process and the public's right to access government information.

57. The combination of the impending deadline, the threat of record destruction, and the ongoing violations of Plaintiffs' rights creates a perfect storm of irreparable harm that necessitates immediate judicial intervention.

58. A temporary pause to preserve the status quo is necessary under the circumstances.

59. Also, a temporary pause will also allow the plaintiffs and the defendants an opportunity to appear at a TRO hearing soon in this court, which will allow this court to sort through the various issues at stake. By then (as noted in the motion to extend time to serve process on defendants that this court granted on 1-15-25, the plaintiffs also hope to secure legal representation or assistance of counsel (which they believe will also help streamline this process).

## F. The Balance of Equities Favors Granting Relief

60. The balance of equities strongly favors granting the requested TRO and stay. Plaintiffs seek only to preserve the status quo and obtain the reasonable accommodations to which they are entitled under federal law. Granting this relief will not prejudice the NHSC or any other party, as it merely maintains the current posture of the case while this Court considers Plaintiffs' claims.

61. Conversely, denying relief would inflict severe and lasting harm on Plaintiffs, potentially foreclosing their ability to pursue their appeal and vindicate their rights. The minimal inconvenience to the NHSC of a brief delay pales in comparison to the profound harm Plaintiffs will suffer if forced to proceed without accommodations.

62. In Winter v. Natural Resources Defense Council, Inc., the Supreme Court emphasized the importance of balancing the competing claims of injury when considering injunctive relief (555 U.S. 7, 24 (2008)). Here, the balance clearly tips in favor of Plaintiffs, as the potential harm they face far outweighs any administrative burden on the state court system.

63. Thus, the balance of equities favors granting a stay. While a brief delay in state proceedings may cause some inconvenience, it is outweighed by the potential harm to the plaintiffs if their federal rights are violated. The risk of irreparable harm to the plaintiffs' rights outweighs any temporary delay in the proceedings.

64. Thus, no injury is believed would occur to Defendants from the granting of a temporary stay, as the purpose of said stay is to maintain the status quo.

65. NB: It should be noted that the NHSC has been rushing to issue rulings before the time they are usually/normally done, which evidently is done in order to try to beat the clock in this court and to flout the authority of this court before this court has a chance to review the matter, and try to make the plaintiffs' claims moor or without remedy. This particular fact goes to show the bad faith of the NHSC in that they are engaging in calculated maneuvers to strip or deprive the plaintiffs out of their rights. If the NHSC think they have done nothing wrong, then why engage in this course of conduct? As an example, in the underlying appeal, the court issued a non-precedential order for a case of first impression and did so in record time (i.e., in under two months when most cases especially ones with a sizable trial court record take up to a year or more), and did so in a haste just before Christmas day at just about the peak of the holiday season. This is a unique decisions made for this case. [NB: The NHSC also didn't address most or almost all questions presented on appeal.]

## G. The Public Interest Favors Granting Relief

66. Granting the requested TRO and stay would serve the public interest in multiple ways. First, it would uphold the fundamental principles of the ADA and ensure that individuals with disabilities have equal access to the judicial system. The Supreme Court has recognized the "unequal treatment of disabled persons in the administration of judicial services has a long history," and that enforcing the ADA in this context serves to vindicate not only the rights of individuals with disabilities but also the integrity of the judicial system itself (Tennessee v. Lane, 541 U.S. at 531).

67. Second, granting relief would protect important constitutional values, including due process, equal protection, and the right of access to the courts. These principles are cornerstone to our system of justice and their preservation serves the public interest. As the Supreme Court noted in Bounds v. Smith, "meaningful access to the courts is a fundamental constitutional right" (430 U.S. 817, 828 (1977)).

68. Third, the underlying appeal involves significant public access and right-to-know issues that have broad implications for government transparency and accountability. Ensuring that these issues receive full and fair consideration on the merits, rather than being dismissed due to procedural hurdles exacerbated by disability discrimination, serves the public's interest in open government and the proper administration of justice.

69. Finally, preventing the destruction of public records serves the public interest by preserving information crucial to government accountability and transparency. In Nixon v. Warner Communications, Inc., the Supreme Court recognized the common law right of public access to judicial records, emphasizing its importance in ensuring the integrity of the judicial process (435 U.S. 589, 597-98 (1978)).

70. Thus, the public interest is served by granting a stay to ensure that all proceedings, both state and federal, are conducted in full compliance with federal disability and civil rights laws. A stay would promote public confidence in the judicial system by demonstrating this Court's commitment to protecting federal rights.

71. Granting an injunction will also facilitate adjudicating an extremely significant and sensitive free speech controversy by a forum with attenuated interest in the subject matter.

72. The public interest would be furthered by granting an injunction.

### H. The All Writs Act Provides Additional Authority for Relief

73. In addition to its inherent equitable powers, this Court has authority under the All Writs Act, 28 U.S.C. § 1651, to issue the requested TRO and stay. The All Writs Act empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law" (28 U.S.C. § 1651(a)).

74. The Supreme Court has held that the All Writs Act authorizes federal courts to issue injunctions against state court proceedings in extraordinary circumstances (see, e.g., United States v. New York Tel. Co., 434 U.S. 159, 172 (1977)). This case presents such circumstances, as the NHSC's actions threaten to deprive this Court of its ability to effectively adjudicate Plaintiffs' federal claims. By preserving the status quo in the state court proceedings, the requested relief would protect this Court's jurisdiction and ensure that Plaintiffs' federal rights are not irreparably harmed before they can be fully adjudicated.

75. In Pennsylvania Bureau of Correction v. U.S. Marshals Service, the Supreme Court reaffirmed that the All Writs Act empowers federal courts to issue such orders.

### I. Abstention Doctrines Do Not Bar Relief

76. While federal courts generally abstain from interfering with ongoing state court proceedings under the Younger doctrine, this case falls within recognized exceptions to that principle. Abstention is not appropriate where there is a showing of bad faith, harassment, or other extraordinary circumstances that create a threat of irreparable injury.

77. Here, the NHSC's repeated denials of reasonable accommodations, coupled with its threat to disclose Plaintiffs' confidential medical information, demonstrate bad faith and harassment. Moreover, the imminent threat of permanent dismissal of Plaintiffs' appeal and the destruction of public records constitute extraordinary circumstances warranting federal intervention.

78. Additionally, the Supreme Court has recognized that federal courts may intervene in state proceedings to prevent "great, immediate, and irreparable harm". The harms Plaintiffs face—permanent loss of appellate rights, and ongoing violations of federal disability law—meet this high standard and justify immediate federal court action.

### VII. FURTHER ARGUMENT

79. The matters before this court are inextricably intertwined with the issues being addressed in the federal court action. Proceeding without guidance from the federal court could lead to inconsistent rulings and potential violations of the plaintiffs' rights.

80. The procedural issues in this case, including the handling of ADA requests, construction of pro se pleadings, and application of court rules, are directly related to the broader claims of discrimination and due process violations raised in the federal action. Resolving these issues separately risks inconsistent outcomes.

81. The federal court's expertise in matters of federal law, particularly regarding the ADA and constitutional rights, will provide crucial guidance for this court's proceedings. Staying this case pending the federal court's ruling will ensure that all decisions are made in compliance with federal law.

82. The potential for federal injunctive relief against the New Hampshire judicial system, including this court, creates a significant risk of conflicting orders if this case proceeds. A stay would prevent such conflicts and ensure that this court does not inadvertently violate any federal court orders.

83. The issues of judicial bias and recusal raised in this case (see the complaint and motion for preliminary injunction) are fundamentally connected to the constitutional claims in the federal action. These issues are best addressed in the context of the broader federal case to ensure a comprehensive and consistent resolution.

84. Any injunction order in the federal action could significantly impact the proceedings.

85. The NHSC should await federal court ruling to ensure consistency and avoid potential conflicts in decisions.

86. Because the plaintiffs were recently notified of progress in this federal court case, which has bearing on the proceedings in the NHSC, the plaintiffs now move for a stay of this case, in particular the NHSC issuing rulings that are/could be affected by the federal court action or by injunctive relief issued by the federal court.

87. Given these numerous and complex issues, it is clear that this matter should be stayed pending resolution of the federal court proceedings.

## VIII. MORE ON GROUNDS FOR STAY

88. The plaintiff's filing of a federal court case involves claims of ADA violations by the New Hampshire Supreme Court, the New Hampshire Judicial Branch (and various defendants). The federal court's ruling on the motion for preliminary injunction will directly impact the process for seeking and obtaining ADA accommodations in New Hampshire state courts, including the NHSC. This, in turn, may affect the Plaintiffs' ability to meet future requirements for filings in the NHSC case. Moreover, the Plaintiffs require additional ADA accommodations to file documents or responses in the NHSC, including motions for reconsideration, etc.

89. The Plaintiffs' federal action raises serious constitutional and civil rights claims that, if successful, would have a significant impact on the proceedings in the NHSC case. It is in the interest of justice and judicial economy to stay this matter pending resolution of those claims. The Plaintiffs will suffer substantial prejudice if required to proceed in this case without the benefit of the federal court's ruling on their ADA-related claims and rights.

90. A stay of proceedings in this case is necessary to prevent potentially conflicting rulings between the NHSC and the federal court regarding the Plaintiffs' rights under the ADA and the process for seeking accommodations. A stay will also conserve judicial resources by avoiding conflict with rulings on ADA-related issues that may be resolved or clarified by the federal court's decision on the motion for preliminary injunction.

91. A stay may be appropriate when "the outcome of another case may be determinative of or highly relevant to the issues in the case at hand". Federal courts have similarly held that a stay is appropriate when "the resolution of another matter will have a direct impact on the issues raised" in the case to be stayed. The factors courts consider in determining whether to grant a stay include: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party".

92. All of these factors weigh in favor of granting a stay in this case. Judicial economy will be served by avoiding potentially duplicative or conflicting rulings on ADA-related issues. The Plaintiffs will face significant hardship if forced to proceed without clarity on their rights under the ADA. And any prejudice to the Defendants is minimal compared to the potential harm to the Plaintiffs.

93. Additional factors include the following:

    a. **Risk of Irreparable Harm:** Allowing the state proceedings to continue while the federal action is pending creates a substantial risk of irreparable harm to Plaintiffs' federal rights. If the federal court ultimately finds merit in Plaintiffs' claims, any decisions rendered by the NHSC in the interim could be tainted by the alleged violations of federal law.

    b. **Judicial Economy and Comity**: Granting a stay would serve the interests of judicial economy and comity between state and federal courts. It would prevent potentially duplicative or conflicting rulings and allow for a comprehensive resolution of all issues in the appropriate forum. In similar situations, courts have allowed stays until federal courts rule on motions for immediate injunctive relief.

    c. **Preserving the Effectiveness of Federal Relief**: A stay is necessary to preserve the federal court's ability to grant effective relief if Plaintiffs prevails on their federal claims.

    d. **Balance of Equities and Public Interest:** The balance of equities and public interest strongly favor granting a stay. While a brief delay in state proceedings may involve an inconvenience, it pales in comparison to the potential violation of Plaintiffs' fundamental rights under federal law. The public interest is served by ensuring that all proceedings, both state and federal, are conducted in full compliance

with federal disability and civil rights laws. A stay would promote public confidence in the judicial system by demonstrating this Court's commitment to protecting federal rights. The balance of equities and public interest favor staying the state court proceedings to allow consideration of Plaintiffs' motion for immediate injunctive relief.

94. The issues raised in the federal action are not merely tangential but go to the heart of the Plaintiffs' ability to meaningfully participate in the state court proceedings and assert their rights under the ADA, among other things. A stay will allow the NHSC to benefit from the federal court's analysis and ruling on the complex ADA issues raised in the Plaintiffs' motion for preliminary injunction, potentially providing guidance that will streamline the resolution of similar issues in the state court case(s).

95. The requested stay is consistent with the principles of comity between state and federal courts, as it will allow the federal court to address the constitutional and civil rights issues raised by the Plaintiffs.

96. The case should be stayed for the following additional reasons:

    a. **Pending Federal Court Action**: The federal court action currently underway directly implicates this case. The federal action raises serious concerns about mistreatment, bias, and discrimination against the plaintiffs that may require federal court intervention to address systemic issues. Furthermore, the ADA issues before the NHSC will be comprehensively addressed by this federal court, which has broader jurisdiction and expertise in matters of federal law. Allowing the federal court to rule first will provide crucial guidance for the state court proceedings.

    b. **Pending Federal Injunctive Relief**: The pending motion for injunctive relief against the NH judicial branch, in federal court, could directly impact the authority of the state court to proceed or could significantly impact said proceedings. Proceeding without resolving this issue could lead to contempt of the federal court.

    c. **Potential for Contradictory Rulings:** If the state court proceeds with making rulings, it may contradict future orders of the federal court, leading to legal confusion and potential violations of plaintiffs' rights.

    d. **Necessity of Federal Court Guidance**: The state court should be required to await the ruling of the federal court to ensure consistency and avoid potential conflicts in decisions, particularly regarding ADA compliance and constitutional rights.

    e. **Recusal/Bias Issues**: The recusal/bias issues raised in this case are intricately linked to the federal court matter. These issues touch upon fundamental questions of judicial impartiality and due process, which are best addressed in the context of the broader constitutional claims raised in the federal action.

    f. **Intertwined Procedural Issues**: The procedural issues in the state court case are inextricably intertwined with the issues before the federal court. Resolving these separately risks inconsistent rulings and potential violations of the plaintiffs' rights.

## IX. ADA ISSUES IMPLICATE THE NEED FOR FEDERAL COURT STAY

97. The ADA issues currently before the state court will be addressed comprehensively by this federal court.

98. The ADA rulings issued by the state court did not adhere to ADA regulations or otherwise suggests bias as follows:

99. The NHSC did not request necessary documentation to support the plaintiffs' ADA accommodation requests. The court initially denied plaintiffs' request without requesting necessary documentation to support the ADA accommodation request and without informing the plaintiff that he could submit supporting documentation. The plaintiffs had to on their persist with multiple ADA requests in order to obtain relief.

100. The NHSC made it unnecessarily difficult for plaintiffs to comply with procedural requirements to obtain relief under the ADA. The NHSC further engaged in exacting/demanding analysis in violation of the ADA.

101. The NHSC prevented the plaintiffs from filing ADA requests through conventional means or by email, while yet the court chided the plaintiffs for problems caused by the e-filing system that impeded the plaintiffs from being able to confidentially file ADA requests in a timely manner.

102. There was also the unsealing of a confidential letter from the plaintiffs' doctor, which had been sealed, without proper justification, thus violating confidentiality and the plaintiffs' rights .

103. The NHSC has issued confusing and contradictory orders regarding the ADA accommodation process which may be clarified by the federal court's ruling.

104. There has been no iterative process in addressing the plaintiffs' ADA needs, as required by law. This failure to engage in a good faith interactive process is a key issue in the federal court case.

105.   The NHSC has refused to hold a hearing on ADA accommodations when requested by the plaintiffs, which may violate ADA requirements and due process.

106.   The NHSC enforces different harsher more rigid standards against the plaintiffs than it does for others, thus violating equal protection and due process.

107.   There are procedural irregularities including concerns the court has circumvented established rules and procedures in handling this case, which may be addressed by the federal court's review of due process claims.

108.   The NHSC has construed plaintiffs' ADA requests against them, using a negative unnatural semantic construction in the most negative light and not in a natural way, in order to, in the past, deny plaintiffs' ADA requests. This violates the US Supreme Court's holding that all pleadings by pro se parties must be liberally construed in their favor (not against them). Similarly, this court has recently issued strict rigid requirements for pro se pleadings threatening adverse consequences therewith.

## X. OTHER ARGUMENT

109.   The recusal issues raised in this case are relevant to the federal court matter and should be resolved here in this context.

110.   The NHSC cannot/should not complete the matters before it until the issues being addressed by the federal court are resolved. Specifically:

a.   The motion for reconsideration/modification/clarification cannot be decided until the issues being addressed by the federal court are resolved. The motion for reconsideration also requires clarity on ADA standards and accommodations.

b.   The ADA accommodation request cannot be properly evaluated and decided until the issues being addressed by the federal court are resolved.

c.   The motion to recuse cannot be decided until the issues being addressed by the federal court are resolved. The motion to recuse is intertwined with the broader claims of bias/discrimination in the federal action.

d.   The issue of the construction of pleadings cannot be decided until the issues being addressed by the federal court are resolved. The issue of pleadings construction may be affected by the federal court's rulings on due process and equal protection.

e.   The First Amendment issue cannot be decided until the issues being addressed by the federal court are resolved. The First Amendment issue raised requires consideration of the federal court's perspective on constitutional rights in this context.

f.   The matters of recusal and reconsideration should be resolved first, as they are fundamental to the integrity of the proceedings.

g.   The procedural issues in this state court case are inextricably intertwined with the issues before the federal court. The state court cannot effectively complete the matters before it until the issues being addressed by the federal court are resolved.

## XI. PRECEDENT FOR STAYS

111.   In similar situations, courts have allowed stays until federal courts rule on motions for immediate injunctive relief. See **Exhibit 2.**

112.   New Hampshire courts have previously recognized the appropriateness of granting stays when parallel federal proceedings are pending, particularly when those proceedings involve claims of constitutional violations or federal law infringements.

113.   However, in discriminatory fashion, the NHSC refuses to follow the same precedent that it has done in other similar cases.

114.   A stay of state court proceedings is appropriate when there is a pending federal action and federal proceedings can warrant a pause in state court actions.  State courts often stay proceedings in deference to parallel federal litigation.  In the federal context, federal courts have granted stays of proceedings pending resolution of related federal actions, especially those involving federal questions. The principles of judicial economy, prevention of conflicting rulings, and respect for federal jurisdiction in matters of federal law apply with equal force to the case at hand. Given the serious federal questions raised in the pending federal action and the potential for conflicting rulings, this Court should follow the spirit of these precedents and grant a stay of proceedings pending resolution of the federal motion for preliminary injunction.

## XII. FINAL ISSUES
### A. Further on Request for Temporary Restraining Order

115.    "[Injunctive relief] is an extraordinary and drastic remedy that is never awarded as of right." Peoples Federal Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012). The standard for issuing a temporary restraining order is "the same as for a preliminary injunction." Bourgoin v. Sebelius, 928 F. Supp. 2d 258, 267 (D. Me. 2013). To obtain relief, the moving party must satisfy the following four factors: (i) the likelihood that the movant will succeed on the merits; (ii) the possibility that, without an injunction, the movant will suffer irreparable harm; (iii) the balance of relevant hardships between the parties favors relief; and (iv) the effect of the court's ruling on the public interest. CVS Pharmacy, Inc. v. Lavin, 951 F.3d 50, 55 (1st Cir. 2020).

116.    A finding of irreparable harm is "the essential prerequisite for equitable relief." Braintree Lab'ys, Inc. v. Citigroup Glob. Markets Inc., 622 F.3d 36, 41 (1st Cir. 2010). Indeed, the Supreme Court "has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." Weinberger v. Romero–Barceló, 456 U.S. 305, 312 (1982). Thus, "[a]n injunction should issue only where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable." Id.

117.    Here, the plaintiffs have carried their burden to demonstrate that they would suffer irreparable harm absent a temporary restraining order. The request for a temporary restraining order asks the court to issue a stay in New Hampshire Supreme Court Case# 2021-0604.

118.    In support of their claim for irreparable harm, they further assert that 1) the New Hampshire Supreme Court will imminently issue a ruling adverse to them in that case and 2) as a result of that ruling, certain defendants will destroy documents that the plaintiffs are attempting to obtain.

119.    The plaintiffs' claim of irreparable harm is further delineated as follows.

   a.    The New Hampshire Supreme Court is about to issue a ruling in the referenced case. The basis for the belief that the New Hampshire Supreme Court is about to issue a ruling in the referenced case is that they have set a deadline of today for motion for reconsideration, which will bring the case to end, and after which mandate will issue.

   b.    The reason why such ruling would allow the defendants to destroy the documents that the plaintiffs seek is because the ADO and the PCC and the AG office have previously indicated that they will not preserve the documents after this case is closed. Plaintiffs further requested follow-up on this point by emailing the AG office and the AG office either ignored, evaded, or deflected or gave a non-answer all of which leads to the inference and confirmation that they intend to destroy the documents after today. See again attached **Exhibit 1**.

120.    The documents that the plaintiffs reference here relate to attorney disciplinary proceedings. The plaintiffs have attempted but been denied the opportunity to review those documents. The changes to the New Hampshire Supreme Court rules on which they were denied the opportunity to comment will allow the defendants to destroy those documents once the New Hampshire Supreme Court issues an adverse ruling in Case# 2021-0604.

121.    Absent this court issuing a temporary restraining order to stay plaintiffs' case in front of the New Hampshire Supreme Court, there is a likelihood that they will suffer immediate irreparable harm.

122.    The plaintiffs have met this essential prerequisite for injunctive relief.

123.    In light of the remaining injunctive relief factors and their motion for a temporary restraining order, the court should allowed a stay on that basis alone.

124.    The plaintiffs have here made a showing of "immediate and irreparable" injury.

125.    The plaintiffs hereby certify in writing that they have given notice to the defendants of this motion pursuant to Fed. R. Civ. P. 65(b)(1)(b).

126.    Alternatively, even if they had not received such notice, the reasons why notice should not be required is that the matter is urgent and irreparable harm is imminent. The defendants may seek to stonewall (as shown in Exhibit 1) or otherwise speed up the process of things including destroying the records at issue (as shown by the NHSC accelerated time to issue a ruling on the right to know case within 2 months instead of a year or more), or take other evasive actions designed to frustrate the plaintiffs' rights as they have done in the past (see Exhibit 1 regarding the efforts by the defendants to evade their promise to provide accommodation to view the records remotely). NB: Note also that the AG office has not denied that their own employee Jennifer

Ramsey confirmed that the NHSC is biased against the plaintiffs and that she fears that they won't grant the accommodation to view remotely the records while she believes other lower NH courts will and that is why she prefers to structure an agreement to present the accommodation to a lower NH court and not the NHSC.

127. For the foregoing reasons, the court should allow a temporary restraining order. The court should rule on the preliminary injunction after the defendants have had an opportunity to respond.

## B. Exceptions to the Anti-Injunction Act

128. The plaintiffs understand that their requested relief implicates the Anti-Injunction Act, 28 U.S.C. § 2283.

129. While the Anti-Injunction Act generally prohibits federal courts from enjoining state court proceedings, this case falls squarely within the recognized exceptions to the Act.

  a. First, as established in Mitchum v. Foster, 407 U.S. 225 (1972), actions brought under 42 U.S.C. § 1983 constitute an "expressly authorized" exception to the Anti-Injunction Act. Plaintiffs' claim, rooted in the deprivation of constitutional rights under color of state law, falls within this exception.

  b. Second, the "necessary in aid of its jurisdiction" exception may apply here, where the federal court's ability to adjudicate a matter is threatened by state court proceedings. See, e.g., In re Diet Drugs, 282 F.3d 220 (3d Cir. 2002).

  c. Third, the "protect or effectuate its judgments" exception could potentially apply if this Court issues judgment in plaintiffs' favor.

130. The plaintiffs allege constitutional claims brought pursuant to § 1983, which takes their requested relief outside of the prohibition in the Anti-Injunction Act. Plaintiffs' claim for relief is thus authorized inter alia by 42 U.S.C. § 1983. 42 U.S.C. § 1983 "is an Act of Congress that falls within the 'expressly authorized' exception" of the anti-injunction statute.

131. Further, the relationship between their §1983 claims and their requested relief is as follows:

132. The plaintiffs' constitutional claims include those arising out of the denial of their proper opportunity to provide commentary on proposed New Hampshire Supreme Court rule changes and the imminent threat of permanent destruction of public records at issue in the underlying case.

133. Further, the NHSC has and will continue to deny any and all pending ADA requests, and will therefore take further action to effectuate the permanent dismissal or denial of plaintiffs' appeal and the denial, as of or by tomorrow, without allowing or granting plaintiffs' necessary reasonable accommodation under the ADA, which is necessary for plaintiffs' to be properly and meaningfully heard and to fully participate in the state court proceedings. The issue is having a fair trial regardless of the outcome. There is substantive fairness and procedural fairness. Plaintiffs are not being given either but in particular, the procedural unfairness is most palpable. Plaintiffs cannot get a fair hearing on the ADA nor on the underlying merits of the case.

134. Immediate federal intervention is necessary to prevent imminent irreparable harm to the plaintiffs, to preserve the status quo and to allow the federal court to determine the need for further injunctive relief. Without this federal intervention now, the defendants will likely try to argue that it is too late for the federal court to intervene. Whether or not this court will agree or not agree that it would be too late for the federal court to intervene, the bottom line is that it will be harmful to allow the defendants to gain the right to make that argument to this very court as a basis to prejudice or circumvent the rights of the plaintiffs. Either way, the imminency, the stakes and the risk of harm implicated by the above, warrants the immediate stay of the NHSC proceedings until this court can more fully address the matter.

135. In light of the plaintiffs' pro se status, their claims[3] should be viewed as being brought pursuant to § 1983 provide an exception to the Anti-Injunction Act.

136. Accordingly, plaintiffs have alleged a statutory exception expressly authorized by act of Congress conferring on the court the power to stay proceedings in New Hampshire courts and therefore plaintiff's requested relief is not barred by the anti-injunction statute.

137. Injunctive relief against a state court proceeding can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights.

138. In this case, plaintiffs allege statutory exception expressly authorized by act of Congress which confers upon this court the power to grant an injunction to stay proceedings in the New Hampshire courts. Plaintiffs

---

[3] The plaintiffs' motion also includes a request for a preliminary injunction and seeks additional relief. Consistent with Federal Rule of Civil Procedure 65(a)(1), the court should consider that part of the plaintiffs' request after the defendants have an opportunity to respond.

base their request for injunctive relief upon the showing of irreparable injury but also upon extraordinary circumstances.

139.    The plaintiffs have comported with the standard of irremediable harm which is required for consideration under the Anti-Injunction Act.

140.    The plaintiffs have shown how enjoining the two state court proceedings at issue are necessary to aid this court's jurisdiction and to protect or effectuate its judgments.

141.    Based on the foregoing, the plaintiffs' requested relief is not barred by the Anti-Injunction Act.

## C. The Younger Abstention Doctrine Does Not Bar

142.    The Younger abstention doctrine, established in Younger v. Harris, 401 U.S. 37 (1971), does not bar federal court intervention in this case. While Younger generally counsels federal courts against interfering with ongoing state proceedings, the Supreme Court has recognized exceptions to this doctrine.

143.    In Dombrowski v. Pfister, 380 U.S. 479 (1965), the Court held that federal injunctive relief may be appropriate in cases involving a statute that is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph. The restrictions imposed by the NHSC, in their cumulative effect, present such a case.

144.    Moreover, the Supreme Court has held that Younger abstention is not appropriate when the state proceeding is motivated by a desire to harass or is conducted in bad faith, or when the challenged statute is flagrantly and patently violative of express constitutional prohibitions. Huffman v. Pursue, Ltd., 420 U.S. 592 (1975). The severe restrictions imposed on plaintiff's ability to present their case effectively suggest bad faith and flagrant violation of his constitutional rights.

145.    A predicate for dismissal under the Younger Abstention Doctrine is lacking where it is alleged and the District court concludes a tribunal is incompetent by reason of bias to adjudicate the issues pending before it.

146.    Plaintiff has stated facts which would obviate the dictates of Younger. There are extraordinary circumstances here and appellate procedures have been exhausted[4].

147.    Hence, the Younger doctrine doesn't require abstention, and comity tilts strongly toward the federal forum.

## D. Further Extraordinary Circumstances - Representation Conflicts
### i. Derek Lick

148.    Derek Lick is a member on the New Hampshire Supreme Court Rules Advisory Committee and also is member sitting on the professional conduct committee. Derek is employed as a partner at Orr & Reno, which firm has a conflict with respect to Craig Donais and/or Russell Hilliard.

149.    Derek Lick, who has a direct conflict, has and continues to rule on the New Hampshire Supreme Court Rules Advisory Committee and the Professional Conduct Committee on matters directly affecting the plaintiffs' current appeal before the NHSC.

### ii. Russell Hilliard, Susan Lowry, and Upton & Hatfield

150.    Russell Hilliard and Susan Lowry are counsel in the action while employed as partners with Upton & Hatfield.

151.    Russell Hilliard and Susan Lowry are members of or insider participants in the New Hampshire Supreme Court Rules Advisory Committee.

152.    Russell Hilliard and Susan Lowry have an interest in blocking disclosure or discovery of records pertaining to Craig Donais.

153.    Russell Hilliard and Susan Lowry have used their position on the New Hampshire Supreme Court Rules Advisory Committee to petition to the New Hampshire Supreme Court to block disclosure or discovery of records pertaining to Craig Donais.

154.    Russell Hilliard has simultaneously sought to block plaintiff's ADA requests to the New Hampshire Supreme Court, as part of their effort to block disclosure or discovery of records pertaining to Craig Donais.

155.    Russell Hilliard and Susan Lowry have a conflict of interest between their roles as advisor to the court as a member of and/or insider participants in said advisory committee and their firm's commitment to zealously represent the interests of Craig Donais.

---

[4] Younger specifically requires federal courts to abstain when a state proceeding is pending and appellate procedures have not been exhausted.

156.    Said conflict of interest should be imputed to the professional conduct committee as the members of the Upton & Hatfield firm have been extensively involved in both the internal rule making machinery of the New Hampshire Supreme Court and representing and advising Craig Donais.

157.    Further, said conflict of interest should be imputed to the justices of the New Hampshire Supreme court for purposes of this independent federal forum.

158.    Plaintiff will suffer irreparable injury if an injunction is not granted.

### iii. Russell Hilliard and Upton & Hatfield Firm are De Facto Counsel to the Defendants

159.    Similarly, Russell Hilliard and firm Upton & Hatfield has essentially appeared or tried to appear as de facto counsel for the New Hampshire Supreme Court Rules Advisory Committee and the New Hampshire Supreme Court while representing Craig Donais in the same underlying case in the New Hampshire Supreme Court.

160.    Russell Hilliard and firm Upton & Hatfield has simultaneously sought to block plaintiff's ADA requests to the New Hampshire Supreme Court, as part of their effort to block disclosure or discovery of records pertaining to Craig Donais.

161.    Russell Hilliard and firm Upton & Hatfield have a conflict of interest between their roles as de factor counsel to the New Hampshire Supreme Court Rules Advisory Committee and the New Hampshire Supreme Court while representing Craig Donais in the same underlying case in the New Hampshire Supreme Court and while zealously representing the interests of Craig Donais.

162.    Russell Hilliard and firm Upton & Hatfield have a joint defense agreement with the New Hampshire Supreme Court Rules Advisory Committee and the New Hampshire Supreme Court against the plaintiffs, while the New Hampshire Supreme Court Rules Advisory Committee and the New Hampshire Supreme Court adjudicates cases, disputes and petitions brought before it involving Craig Donais.

163.    Said conflict of interest should be imputed to the professional conduct committee as the members of the Upton & Hatfield firm have been extensively involved in both the internal rule making machinery of the New Hampshire Supreme Court and representing and advising Craig Donais.

164.    Further, said conflict of interest should be imputed to the justices of the New Hampshire Supreme court for purposes of this independent federal forum.

165.    Plaintiff will suffer irreparable injury if an injunction is not granted.

166.    NB: The justices of the New Hampshire Supreme Court are also defendants in this action, among others.

167.    Plaintiffs are being denied a fair hearing on the merits of their appeal before the NHSC.

168.    The New Hampshire Supreme court has, or has had cases before it where Craig Donais was a respondent.

169.    The existence of such proceedings would be appropriate subject matter for discovery.

170.    The New Hampshire Supreme Court provides no forum for discovery, nor is there any reason to believe that the NHSC could adjudicate such matters and maintain an appearance of integrity and impartiality.

171.    The proceedings in the New Hampshire Supreme Court related to Plaintiff's appeal are a sham proceeding

### F. Justiciability
### i. Plaintiff's Complaint Is Justiciable

172.    Plaintiffs allege they have or imminently will suffer injury that is fairly traceable to Defendants' conduct.

173.    The United States Supreme Court has identified three constitutional requirements for standing: (1) the plaintiff must allege that he has suffered or imminently will suffer an injury; (2) the injury is fairly traceable to the Defendant's conduct; and (3) the plaintiff must allege that a favorable federal court decision is likely to redress the injury. Northeastern Florida Contractors v. Jacksonville, ___ U.S. ___, 113 S.Ct. 2297, 2302 (1993).

174.    The plaintiffs allege that they have case with or before the NHSC which proceeding apply to them and has caused them injury. Thus, plaintiffs satisfy prong one, that they've suffered or imminently will suffer an injury.

175.    The plaintiffs allege that the injury they have suffered or imminently will suffer is fairly traceable to the Defendant's conduct as outlined above and in the complaint, thus satisfying prong two.

176.    The plaintiffs further allege that a favorable federal court decision is likely to redress the injury, thus satisfying prong three.

### ii. Ripeness

177.    The ripeness doctrine seeks to separate matters that are premature for review - because the injury is speculative and never may occur - from those cases that are appropriate for federal court action.

178.     Because Plaintiff has filed cases with the various courts, committee and entities being sued in this case, and has made ADA requests that are pending, therefore both the plaintiff and defendants are subject to the ADA and the attendant claims made herein.

179.     Threat of injury from the defendants' course of conduct is not too remote to satisfy the 'case-or-controversy' requirement. It is thus not speculative that Plaintiff will suffer harm and imminently so.

180.     Therefore, this Court should find substantial hardship to satisfy the requirement of ripeness.

### iv. Plaintiff Has Standing Due To Presence Of A Case Or Controversy

181.     The Plaintiffs have standing due to presence of an actual controversy.

182.     This Honorable Court's issuance of an order based on the merits would not amount to an advisory opinion because there is actual controversy between Plaintiff and the members of the NHSC, as stated above, and such an order would change the parties' legal relationship to one another.

183.     As such, Plaintiff's claims against these particular Defendants are justiciable.

## XIII. NOTICE TO DEFENDANTS

184.     The plaintiffs hereby certify that the plaintiff provided notice of this motion to the defendants in conformance with the rules of the United States District Court for the District of New Hampshire.

185.     Thus, the defendants are on notice of the pending motion.

186.     However, the requested relief involves a stay of certain state court proceedings due to expiring deadlines today and the imminent threat of irreparable harm, and that, absent a stay, plaintiffs will suffer irreparable injury if a temporary stay is not granted.

187.     Accordingly, the court should construes this motion as one seeking ex parte relief under Fed.R.Civ.P.65.

188.     Plaintiffs request, if necessary, that this federal court conduct a hearing on the motion pursuant to 28 U.S.C. § 636(b)(1)(B).

## XIV. CONCLUSION

189.     For the foregoing reasons, Plaintiffs respectfully request that this Court grant their emergency motion for a TRO and stay of the NHSC proceedings. The requested relief is necessary to prevent irreparable harm, preserve Plaintiffs' federal rights, and ensure their important claims receive fair consideration on the merits.

190.     Given these numerous, complex, and interrelated issues, it is clear that this matter should be stayed pending resolution of the federal court proceedings. A stay would serve the interests of justice, judicial economy, and the protection of the plaintiffs' constitutional and civil rights.

191.     Thus, a temporary stay would be appropriate while the federal court considers the motion for immediate injunctive relief. Given these factors, it is imperative that this Court grant a stay of proceedings to allow it to consider the motion for preliminary injunction. This approach would serve the interests of justice, prevent potential conflicts between state& federal rulings, and ensure all of Plaintiffs' rights are adequately protected.

192.     For the foregoing reasons, plaintiffs respectfully requests that this Court stay all proceedings in the state court. The serious nature of the federal claims, the risk of irreparable harm, and the interests of judicial economy and comity all weigh heavily in favor of granting a stay.

193.     The Plaintiffs respectfully request that this Court rule on this motion to stay as expeditiously as possible.

194.     For the foregoing reasons, the Plaintiffs respectfully request that this Court:
   a)  Stay all proceedings in this matter pending resolution of the motion for preliminary injunction filed and transferred to the United States District Court for the District of Maine;
   b)  Issue an order prohibiting any adverse action against the Plaintiffs during the pendency of the stay;
   c)  Grant such other and further relief as this Court deems just and proper.

195.     This is filed as an emergency motion for a stay or a Temporary Restraining Order (TRO) today. This motion requires a ruling by close of business on Monday, January 27, 2025, as the stay or TRO must be implemented by Tuesday, January 28, 2025, at the state court's opening. Additionally, there are crucial tasks that must be completed just before midnight on January 27, 2025.

196.     The plaintiffs have provided a copy of this emergency motion to the defendants[5].

197.     WHEREFORE, the Plaintiffs respectfully request that this Honorable Court:

---

[5]  The plaintiffs previously provided a copy of the complaint and the motion for preliminary injunction to the defendants and the defendants are aware of this case. In fact, the plaintiffs also actually filed the complaint into the state court case and previously also subsequently moved for a stay in that court based on the complaint and motion for preliminary injunction.

a) Stay all proceedings in this matter pending resolution of the Plaintiffs' motion for preliminary injunction first filed in the United States District Court for the District of Massachusetts, which was transferred to the federal court of New Hampshire and then to the federal court of Maine;

b) Schedule a hearing if necessary to aid in the federal court's ruling on the motion for preliminary injunction and to address the impact of that ruling on further proceedings in this case; and

c) Grant such other and further relief as this Court deems just and proper.

Respectfully submitted by:

/s/Natalie Anderson

Plaintiff Natalie Anderson

679 Washington Street, Suite # 8-206

Attleboro, MA 02703

Tel. 617-710-7093

Email: liberty_6@msn.com

/s/andre bisasor

Andre Bisasor

679 Washington Street, Suite # 8-206

Attleboro, MA 02703

Tel. 781-492-5675

Dated: January 27, 2025                                    Email: quickquantum@aol.com

## CERTIFICATE OF SERVICE

Although no defendant has entered an appearance, and no attorney has announced representation of the defendants, the plaintiffs have/will provide a copy of this filing to the defendants via postal mail and/or email.

/s/Natalie Anderson

Natalie Anderson

/s/Andre Bisasor

Andre Bisasor

# <u>Exhibit 1</u>

1/27/25, 11:11 AM    AOL Mail - RE: Question | Case No. 2021-0604, Natalie Anderson v. New Hampshire Professional Conduct Committee et al.

Case 1:24-cv-00368-JL-TSM   Document 30   Filed 01/27/25   Page 18 of 22

## RE: Question | Case No. 2021-0604, Natalie Anderson v. New Hampshire Professional Conduct Committee et al.

From:  Galdieri, Anthony (anthony.j.galdieri@doj.nh.gov)

To:     quickquantum@aol.com; Samuel.RV.Garland@doj.nh.gov

Date:  Friday, December 27, 2024 at 10:49 AM EST

Documents will continue to be preserved consistent with our preservation obligations.

More fulsome answers will have to await Sam's return.  I am not as involved with the underlying accommodation issue to answer your question at this time.

Anthony

---

**From:** Andre Bisasor <quickquantum@aol.com>
**Sent:** Friday, December 27, 2024 10:20 AM
**To:** Garland, Samuel <samuel.rv.garland@doj.nh.gov>; Galdieri, Anthony <anthony.j.galdieri@doj.nh.gov>
**Subject:** Re: Question | Case No. 2021-0604, Natalie Anderson v. New Hampshire Professional Conduct Committee et al.

---

| **EXTERNAL:** Do not open attachments or click on links unless you recognize and trust the sender. |
| --- |

can you also address my other questions. the lack of answering is making me a little nervous. for example, the response that documents are being preserved does not address if or when they will stop being preserved as I asked. Also, not answering the issue of the pending accommodation for remote viewing, is also concerning.

-Andre

On Friday, December 27, 2024 at 10:11:44 AM EST, Galdieri, Anthony <anthony.j.galdieri@doj.nh.gov> wrote:

I will review and determine what to file in response.

---

**From:** Andre Bisasor <quickquantum@aol.com>
**Sent:** Friday, December 27, 2024 10:09 AM
**To:** Garland, Samuel <samuel.rv.garland@doj.nh.gov>; Galdieri, Anthony <anthony.j.galdieri@doj.nh.gov>
**Subject:** Re: Question | Case No. 2021-0604, Natalie Anderson v. New Hampshire Professional Conduct Committee et al.

1/27/25, 11:11 AM     AOL Mail - RE: Question | Case No. 2021-0604, Natalie Anderson v. New Hampshire Professional Conduct Committee et al.

Case 1:24-cv-00360-JL-TSM   Document 80   Filed 01/27/25   Page 1 of 22

> **EXTERNAL:** Do not open attachments or click on links unless you recognize and trust the sender.

Anthony, I just saw your email reply below after filing was made. See filing attached which provides more contest for the request. Can you review and let me know if you still object? Can you at least not object?

**-**Andre

On Friday, December 27, 2024 at 09:55:03 AM EST, Galdieri, Anthony <anthony.j.galdieri@doj.nh.gov> wrote:

> Documents are still being preserved.
>
> Please note our objection to any motion for extension of time you may file.
>
> Thank you,
>
> Anthony
>
> ---
>
> **From:** Andre Bisasor <quickquantum@aol.com>
> **Sent:** Tuesday, December 24, 2024 1:35 PM
> **To:** Galdieri, Anthony <anthony.j.galdieri@doj.nh.gov>; Garland, Samuel <samuel.rv.garland@doj.nh.gov>
> **Subject:** Question | Case No. 2021-0604, Natalie Anderson v. New Hampshire Professional Conduct Committee et al.
>
> > **EXTERNAL:** Do not open attachments or click on links unless you recognize and trust the sender.
>
> Dear Anthony and Sam,
>
> Sorry to email right before Christmas, but in light of the NH Supreme Court notice that just dropped today for Case No. 2021-0604, I am reaching out to you to confirm that the 2016 ADO records/documents pertaining to Donais, that are at issue, will b e preserved and not be destroyed until both of the following are resolved: a) all reconsideration periods and motions to reconsider are resolved, and b) all pending federal court litigation that implicates this matter and the ADO/PCC, is resolved.
>
> I am also seeking an extension on the time to file a motion to reconsider in Case No. 2021-0604, given, among other things, that today is Christmas eve, tomorrow is Christmas, and we are in the middle of the Christmas holidays/new year holidays period. Will you assent?

Please let me know asap.


Sincerely,

Andre Bisasor

# Exhibit 2

# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

### In Case No. 2006-0689, In the Matter of Kathleen Peterson and Warren E. Peterson, the court on January 5, 2007, issued the following order:

Motion to stay, to which no objection has been filed, is granted.  The order requiring the appellant to pay the deposit for transcripts on or before January 2, 2007, is vacated, and proceedings in this court are stayed pending further order of this court.  The appellant shall provide this court with a copy of any orders issued by the United States District Court for the District of New Hampshire on his Motion for Immediate Injunctive and Declaratory Relief or An Emergency Hearing within fifteen days of his receipt of such orders.

This order is entered by a single justice (Hicks, J.).  See Rule 21(7).

**Eileen Fox,**
**Clerk**

Distribution:
Clerk, Brentwood Family Court  1998-M-0317
United States District Court
Mr. Warren E. Peterson
Patti Blanchette, Esquire
Jennifer Westover, Transcription Coordinator
Court Reporter
Transcript Recorder, Supreme Court
File