UNITED STATES DISTRICT COURT-DISTRICT OF NEW HAMPSHIRE
[via transfer designation to UNITED STATES DISTRICT COURT- DISTRICT OF MAINE]
CIVIL ACTION NO: 1:24-cv-00360
ANDRE BISASOR, et. al. v. NEW HAMPSHIRE JUDICIAL BRANCH, et. al

## **PLAINTIFF'S [EMERGENCY] MOTION FOR CLARIFICATION OF THE MAGISTRATE JUDGE'S 4-8-25 REPORT AND RECOMMENDATION**

### I. INTRODUCTION

1. Plaintiff respectfully submits this Motion to Clarify the Court's April 8, 2025 Report and Recommendation ("R&R").

2. Clarification is urgently needed on several procedural and substantive matters that remain unresolved despite the Court's R&R. Specifically, Plaintiffs seek clarification on: (1) why the R&R did not address claims against defendants other than the state courts; (2) what specific deficiencies in the complaint should be addressed by amendment in order to establish jurisdiction; and (3) other items as further outlined below. Without this clarification, Plaintiff faces procedural uncertainty that may prejudice substantial rights and lead to unintended procedural default.

### II. FACTUAL BACKGROUND

3. On November 4, 2024, this case was transferred from the District of Massachusetts to the District of New Hampshire. Due to recusals by all New Hampshire federal judges, the case was referred to the District of Maine on December 2, 2024, with Judge Nancy Torresen assigned as the presiding judge and Magistrate Judge John C. Nivison assigned to perform designated duties.

4. On January 15, 2025, Magistrate Judge Nivison granted Plaintiff's motion to extend the time for service of process, establishing a new deadline of April 11, 2025. In that same order, the Court stated it would be reviewing the complaint for jurisdictional issues.

5. Through subsequent orders, the Court established a complex procedural history regarding potential amendment of the complaint:

6. On February 5, 2025, the Court dismissed as moot Plaintiff's motion to extend time to amend the complaint, explaining there was "no deadline for the filing of an amended complaint" except to the extent Plaintiff wanted the Court to consider the amendment when assessing jurisdiction.

1

7. On March 6, 2025, the Court denied Plaintiff's renewed motion for extension of time to amend the complaint, reiterating that there was no established deadline for amendment, but that Plaintiff "may seek an amendment consistent with the governing rules and this order".

8. In the same March 6 order, the Court acknowledged it would "consider any amendment that Plaintiffs file while the Court is assessing the jurisdictional issue" (ECF No. 37, fn. 1).

9. The 3-6-25 stated, in relevant part:
   ….
   C. Role of the Magistrate Judge
   …In accordance with 28 U.S.C. § 636, a district judge may refer this preliminary review to a magistrate. **A party may file an objection to a recommended decision. Fed.R.Civ.P. 72(b). If a plaintiff can allege facts that address the deficiencies the magistrate judge identifies in the recommended decision, the plaintiff is typically allowed the opportunity to seek to amend the complaint**. Consistent with the process outlined herein, if I conclude that Plaintiffs' complaint is within the Court's jurisdiction, service would be authorized. If I were to conclude that the Court lacks subject matter jurisdiction over the Plaintiffs' claims, I would recommend the Court dismiss the matter unless Plaintiffs amend the complaint within the objection period to assert a claim within the Court's jurisdiction. <u>Plaintiffs, therefore, would have an opportunity to address any jurisdictional issues identified by the Court before the matter would be dismissed.</u>
   ……
   1 **The process by which the Court will assess the jurisdictional issue (1) allows Plaintiffs to avoid the need to file an amended complaint to address the jurisdictional issues if the Court were to conclude that Plaintiffs have stated a claim within the Court's jurisdiction and (2) permits <u>Plaintiffs to address in an amended complaint the jurisdictional concerns that are identified if in a recommended decision</u>, I conclude that the Court lacks jurisdiction over Plaintiffs' claim as alleged. The Court will also consider any amendment that Plaintiffs file while the Court is assessing the jurisdictional issue.**
   ………
   2. I deny the motion for an extension of time, including Plaintiffs' alternative request for reconsideration. **Plaintiffs, however, may seek an amendment consistent with the governing rules and this order.**

10. On April 8, 2025, Magistrate Judge Nivison issued a Recommended Decision recommending dismissal of the entire complaint for lack of jurisdiction based on the Rooker-Feldman doctrine, unless Plaintiff "file[s] an amended complaint to allege a claim within the Court's subject matter jurisdiction" (ECF No. 38).

11. On 4-18-25, upon motion filed by plaintiffs, the court allowed the plaintiffs an extension of time until 5-22-25 to file a motion for reconsideration or objection to the magistrate judge's 4-8-25 report and report and recommendation.

12. The 4-8-25 order stated, in relevant part:

Based on the foregoing analysis, **unless Plaintiffs file an amended complaint to allege a claim within the Court's subject matter jurisdiction, I recommend the Court dismiss the Plaintiffs' complaint.**
….
A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, **within fourteen (14) days of being served with a copy thereof.** Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order

13. The plaintiffs now seek clarification on the R&R as outlined in the next section.

### III.  GROUNDS FOR CLARIFICATION
### A. The Court's R&R Fails to Clarify the Amendment Process Despite Previous Promises of Guidance

14. The R&R recommends dismissal unless Plaintiff files an amended complaint within the Court's jurisdiction, but provides no guidance or process for such amendment.

15. This contradicts previous statements in the March 6 Order that promised specific guidance:

    "If I were to conclude that the Court lacks subject matter jurisdiction over the Plaintiffs' claims, I would recommend the Court dismiss the matter unless Plaintiffs amend the complaint within the objection period to assert a claim within the Court's jurisdiction. Plaintiffs, therefore, would have an opportunity to address any jurisdictional issues identified by the Court before the matter would be dismissed." (ECF No. 37)

16. Despite this promise, the R&R identifies in general terms that there exists jurisdictional defects but fails to specify what those specific defects are or what specific elements would need to be amended to establish jurisdiction.

17. Plaintiffs are thus puzzled how a 78 page complaint could generate only a short 5-page ruling that addresses only a small portion of the claims, in a most general way. In fact, the magistrate judge in a prior ruling (on 3-6-25[1]) suggested that a benefit of having the magistrate judge provide a jurisdictional review prior to any amendment of the complaint, would be that the magistrate order would indicate the areas that need to be addressed by the plaintiffs in an amended complaint, in order to overcome jurisdictional issues, if any. No such indications have ostensibly been provided,

---

[1] Footnote 1 of the 3-6-25 order states: "The process by which the Court will assess the jurisdictional issue (1) allows Plaintiffs to avoid the need to file an amended complaint to address the jurisdictional issues if the Court were to conclude that Plaintiffs have stated a claim within the Court's jurisdiction and (2) permits <u>Plaintiffs to address in an amended complaint the jurisdictional concerns that are identified if in a recommended decision</u>, I conclude that the Court lacks jurisdiction over Plaintiffs' claim as alleged…"

3

and the plaintiffs are essentially, at the same place they were at when they first sought extension of the time to serve process and/or to amend the complaint, prior to the R&R.

### B. The R&R's Jurisdictional Analysis Is Impermissibly Narrow

18. The R&R evidently focuses exclusively on the Rooker-Feldman doctrine as it applies to claims against the New Hampshire state courts, but fails to address:

    a. <u>Claims Against Non-Judicial Defendants</u>: The complaint names several defendants who are not judicial entities, including the New Hampshire Attorney General's Office, Karen Gorham (in her individual capacity), and Tyler Technologies, Inc. (a private corporation). The Rooker-Feldman doctrine does not apply with equal force to all defendants, particularly private entities like Tyler Technologies.

    b. <u>Claims Not Challenging State Court Judgments</u>: Several claims in the complaint do not seek to overturn state court judgments but instead challenge independent actions such as:

        i. Alleged violations of confidentiality requirements under the ADA.

        ii. ADA policies regarding procedures for accessing ADA accommodations.

        iii. Discriminatory treatment in public meetings unrelated to court proceedings.

        iv. Equitable relief to bring the state courts into compliance with the ADA.

        v. Other items outlined herein.

    c. <u>Claims regarding system access issues</u> with Tyler Technologies' electronic filing system

19. The R&R's failure to differentiate between claims that may implicate Rooker-Feldman and those that do not leaves Plaintiffs without guidance on which aspects of the complaint might survive jurisdictional scrutiny and which require amendment.

20. Thus, the plaintiffs need clarification as to why the magistrate judge did not address the other claims of the plaintiffs that are not based on state court proceedings, that do not challenge state court judgments or do not seek to overturn state court judgments but instead challenge independent actions, that evidently are within the jurisdiction of the federal court.

**C. The R&R's Jurisdictional Analysis Fails To Differentiate Non-Judicial Defendants**

21. The plaintiffs needs clarification as to why the magistrate judge did not differentiate claims against non-judicial defendants, who are not judicial entities, including the New Hampshire Attorney General's Office, Karen Gorham (in her individual capacity), and Tyler Technologies, Inc. (a private corporation), among others.

22. Jurisdictional issues, such as those that may be implicated by Rooker-Feldman doctrine, do not apply with equal force to all defendants, particularly private entities like Tyler Technologies, etc.

**D. The R&R's Application of Rooker-Feldman Is Overly Broad**

23. The R&R applies Rooker-Feldman to bar all claims without the nuanced analysis required by recent Supreme Court precedent. In Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), the Supreme Court clarified that Rooker-Feldman is a "narrow doctrine" that applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

24. The complaint alleges multiple injuries caused by defendant conduct separate from state court judgments themselves. For example:

    a. The alleged blocking of Plaintiff's access to the electronic filing system (paragraph 71 of complaint)

    b. Disclosure of confidential medical information to third parties (paragraphs 67-68)

    c. Discriminatory treatment in rules committee meetings (paragraphs 208-224)

    d. Other items as indicated herein.

25. These claims allege independent violations of federal law that may fall outside Rooker-Feldman's scope, yet the R&R did not analyze these distinctions.

5

26. Furthermore, the R&R appears to apply Rooker-Feldman to bar all claims without the nuanced analysis required by Supreme Court precedent. The complaint alleges multiple injuries caused by the various defendants' conduct, separate from state court judgments themselves.

27. Thus, the plaintiffs further need clarification as to why magistrate judge's R&R failed to differentiate between claims that may implicate Rooker-Feldman and those that do not, as this leaves Plaintiff without guidance on which aspects of the complaint might survive jurisdictional scrutiny and which require amendment.

### E. The R&R Fails to Address Exceptions to Rooker-Feldman That May Apply

28. The R&R does not consider potential exceptions to Rooker-Feldman that could preserve jurisdiction over some claims including but not limited to the following:

    a. <u>ADA Claims</u>: In Tennessee v. Lane, 541 U.S. 509 (2004), the Supreme Court recognized that Congress validly abrogated state sovereign immunity for claims under Title II of the ADA in the context of access to courts. The R&R fails to address whether this abrogation affects the Rooker-Feldman analysis for ADA claims.

    b. <u>Prospective Injunctive Relief</u>: Under Ex parte Young, 209 U.S. 123 (1908), claims for prospective injunctive relief against state officials to prevent ongoing violations of federal law may proceed despite sovereign immunity. The R&R does not analyze which claims seek such relief and whether they might survive dismissal.

    c. Similarly, the issue of pervasive judicial bias and its impact on seeking relief in federal court has not been addressed.

29. So not only does the R&R not consider potential exceptions to Rooker-Feldman that could preserve jurisdiction over some claims such as the plaintiffs ADA claims, but the magistrate judge did not appear to consider, and certainly did not address, the plaintiffs ADA claims at all, many of which do not seek to overturn any judgment of a state court, and whereupon the ADA provides

direct jurisdiction of federal courts over state courts, under Tennessee v Lane, among other established Supreme Court and First Circuit precedent.

## IV. REQUEST FOR CLARIFICATION

30. These clarifications are essential to aid in providing a proper motion for reconsideration, a proper objection and to properly prepare an amended complaint.

31. For the foregoing reasons, Plaintiff respectfully requests that the Court issue an order clarifying:

    a. Which specific claims in the complaint are subject to dismissal under Rooker-Feldman and which are not;

    b. Which defendants, if any, are not subject to the Rooker-Feldman jurisdictional bar;

    c. What specific allegations would need to be included in an amended complaint to establish jurisdiction; and

    d. Whether claims for prospective injunctive relief under the ADA against individual defendants in their official capacities might survive Rooker-Feldman scrutiny;

## V. LEGAL ANALYSIS SUPPORTING THIS MOTION
### A. Standard for Motions to Clarify

32. A motion to clarify is appropriate when a court order contains ambiguities or inconsistencies that affect a party's procedural rights. A party may properly move to clarify a court's order if the meaning of the order is not apparent in a particular respect. Here, the contradictions between the Court's previous procedural guidance and the R&R create the type of uncertainty that warrants clarification.

### B. The Court's Own Procedures Mandate Specific Guidance for Pro Se Plaintiffs

33. The First Circuit has consistently held that courts must liberally construe pro se pleadings and provide clear guidance to pro se litigants. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). The March 6 Order recognized this principle when it promised to explain the jurisdictional defects and provide an opportunity to amend

7

"before the matter would be dismissed" (ECF No. 37). The R&R's failure to provide this promised guidance contravenes these principles.

### C. The Rooker-Feldman Analysis Must Be Claim-Specific and Defendant-Specific

34. The First Circuit requires a claim-by-claim analysis of jurisdiction, particularly when the Rooker-Feldman doctrine is involved. See Klimowicz v. Deutsche Bank Nat'l Trust Co., 907 F.3d 61, 64-65 (1st Cir. 2018) (analyzing individual claims to determine which were barred by Rooker-Feldman and which were not).

35. The Supreme Court has repeatedly emphasized the narrowness of Rooker-Feldman. See Lance v. Dennis, 546 U.S. 459, 464 (2006) (cautioning against expansive interpretations). The R&R's blanket application to all claims against all defendants, without differentiation, contradicts this guidance.

### D. ADA Claims Against State Courts May Have Special Jurisdictional Considerations

36. In Tennessee v. Lane, 541 U.S. 509 (2004), the Supreme Court recognized Congress's authority to abrogate state sovereign immunity for claims under Title II of the ADA in the context of access to courts. This creates potential jurisdictional nuances for ADA claims against state courts that the R&R does not address.

37. The interaction between Rooker-Feldman and valid claims under federal disability rights laws requires more detailed analysis than the R&R provides. See Badillo-Santiago v. Naveira-Merly, 378 F.3d 1, 6-7 (1st Cir. 2004) (analyzing the intersection of ADA claims and Rooker-Feldman).

38. It should be noted that the R&R fails to consider the central role of ADA accommodations in this case:

    a. <u>Ongoing Denial of Accommodations</u>: The New Hampshire Supreme Court (NHSC) has consistently denied, in more than one proceeding as well as administratively, Plaintiffs' requests for reasonable accommodations pertaining to being able to access proceedings remotely or pertaining to time accommodations and pertaining to ADA confidentiality,

      violating their rights under the ADA and even their own court policies. These denial of accommodations are not state court final judgment as the case was not about ADA accommodations. These ADA accommodations issues only arose because the plaintiffs needed ADA accommodations in order to prosecute their appeal. These denials are thus policy-based. These denials also were made administratively not judicially. Furthermore, it should be noted that the state court cases are not final and no final judgment has been effected.

  b. <u>Impact on Appellate Rights:</u> The NHSC's refusal to grant accommodations effectively denies Plaintiffs meaningful access to the appellate process.

  c. <u>Confidentiality Concerns</u>: The NHSC's handling of Plaintiffs' medical information raises serious privacy issues.

39. Further the Court's Order does not address:

  a. <u>Record Destruction</u>: There is an immediate threat of destruction of crucial public records by the New Hampshire Attorney General's Office and Attorney Discipline Office. The Court's order does not address this issue as a matter of equitable relief. There is no state court judgment or adjudication of this issue. The underlying cases in state court do involve claims under the ADA to access public records remotely as an accommodation to physical access to the public records. There is no lawsuit in state court about that ADA issue. This issue has only been brought in federal court. Rooker-Feldman is not implicated by this issue as there is no state court judgment on this issue and case has been brought in state court on this issue. Please liberally construe what we are saying here, howbeit in-artfully. Similarly, the claims here are against the NH Attorney General Office and the NH Attorney Discipline Office, which are not state court defendants and do not involve state court proceedings. There is a risk permanent loss of plaintiffs' rights. This is also an equitable relief issue.

9

    b. <u>Ongoing Constitutional Violations</u>: The proceedings in state court are not yet final. These proceedings threaten to violate Plaintiffs' constitutional rights to due process, equal protection, and access to courts.

40. It should be noted that that plaintiff Bisasor is not a party in plaintiff Anderson's case and plaintiff Anderson is not in plaintiff Bisasor's case.

41. It should be noted that also that there is no final judgment in both cases as both technically are on appeal with the Supreme Court.

### E. The R&R Does Not Consider That State Court Judgments Are Not Final Until All Appeals Or Time For Appeals Are Exhausted

42. If a state court judgment is appealed to the U.S. Supreme Court, a state court judgment remains non-final until the Supreme Court either denies certiorari or issues a ruling.

43. If the state court judgment is still pending review (e.g., via a U.S. Supreme Court appeal), Rooker-Feldman does not bar federal jurisdiction.

44. If the New Hampshire Supreme Court's judgment is on appeal to the U.S. Supreme Court, it is not yet final, and Rooker-Feldman does not apply.

45. The Supreme Court clarified in See Exxon Mobil Corp. v. Saudi Basic Industries Corp. that Rooker-Feldman applies only after state proceedings conclude.

46. Rooker-Feldman does not bar federal jurisdiction if the plaintiff's claims:

    a. Are not a "de facto appeal" of the state court judgment.

    b. Allege injuries caused by third parties (e.g., ADA violations by the court itself), not the judgment itself.

    c. Involve issues that could not have been raised in the state court proceedings.

47. Federal district courts retain jurisdiction over claims that do not directly challenge a final state court judgment.

48. In this case, claims about ADA accommodations, constitutional violations, or procedural irregularities in state court proceedings qualify as independent federal claims.

49. Since the New Hampshire Supreme Court's judgments are pending appeal at the U.S. Supreme Court, they are not final, and Rooker-Feldman does not bar federal jurisdiction.

50. This court may hear plaintiffs' claims because they:

    a. Do not directly challenge the state court's substantive decisions.

    b. Involve independent federal questions (e.g., ADA violations, due process issues).

    c. Focuses on procedural rights (e.g., ADA accommodations) rather than the merits of the state court's judgments.

51. Similarly, the claims against Karen Gorham is as an administrator. She is not a judge. There was no state court judgment, or judicial proceeding involved in the claims against her in her role as an administrator. Similarly, claims against the NH Judicial Branch and the NH Superior Court are in their role as administrator, not as a court in terms of a judgment or proceedings.

52. The claims against Tyler Technologies clearly cannot implicate Rooker-Feldman.

53. Rooker-Feldman does not bar decisions on policy or equitable relief regarding ADA policy for example.

54. The R&R does not address any of these nuanced issues and fails to abide by the narrowness doctrine when applying Rooker-Feldman.

55. The plaintiffs request clarification on why the magistrate judge appears to have not considered or addressed these issues and whether these issues implicate survival of any of the plaintiffs' claims, especially upon amendment.

## VI. CONCLUSION

56. Please note that the above underscores the legitimacy and importance of obtaining clarification of items pertaining to the R&R, in order to proceed with reconsideration, or objection and/or an amended complaint.

57. Proper clarification from the court is thus necessary in light of the omissions and other implications of the R&R, in order to then seek reconsideration or objection or amendment, all of which requires careful consideration of the numerous factual and legal issues, as well as incorporating updates and amendments that have arisen since the original filing.

### VII. RELIEF REQUESTED

58. For the reasons set forth above, Plaintiff respectfully requests that this Court grant this Motion to Clarify and provide guidance on the procedural and substantive issues identified herein. Without such clarification, Plaintiff faces significant risk of procedural missteps that could prejudice substantial rights.

59. Alternatively, should the Court determine that reconsideration rather than clarification is appropriate, Plaintiff respectfully requests that this motion be treated as a Motion for Reconsideration of the April 8, 2025 R&R.

60. WHEREFORE, Plaintiffs respectfully request that this Court:

    A. Grant clarification as requested;

    B. Provide an order on this motion before the current deadline expires;

    C. Grant further extension of the current deadline to file a motion for reconsideration and/or objection to the R&R given the need to clarify these issues and the need to incorporate any such clarification into motion for reconsideration or objection or amendment of the complaint; and

    D. Grant any other relief this Court deems just and proper under the circumstances.

Respectfully submitted,
/s/ Andre Bisasor
Andre Bisasor, Pro Se

Dated: May 14, 2025