UNITED STATES DISTRICT COURT-DISTRICT OF NEW HAMPSHIRE
[via transfer designation to UNITED STATES DISTRICT COURT- DISTRICT OF MAINE]
CIVIL ACTION NO: 1:24-cv-00360
ANDRE BISASOR, et. al. v. NEW HAMPSHIRE JUDICIAL BRANCH, et. al

## PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S JUNE 24, 2025 ORDER ON MOTION FOR CLARIFICATION

### I. INTRODUCTION

1. Plaintiffs respectfully move this Court to reconsider its June 24, 2025 Order denying Plaintiffs' Motion for Clarification of the Magistrate Judge's April 8, 2025 Report and Recommendation.

2. Federal courts possess inherent authority and obligation to provide clear procedural guidance to pro se litigants, particularly when jurisdictional determinations may permanently foreclose their claims. The Court's failure to clarify critical ambiguities in the Magistrate's Report runs contrary to established First Circuit precedent requiring liberal construction of pro se pleadings and meaningful opportunities to cure identified deficiencies. Moreover, the Court's Order contains clear errors of law regarding the scope and application of the Rooker-Feldman doctrine that compel reconsideration.

### II. FACTUAL AND PROCEDURAL BACKGROUND

3. This case arises from alleged violations of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and constitutional provisions by multiple defendants including both judicial and non-judicial entities. The Magistrate Judge issued a five-page Report and Recommendation on April 8, 2025, recommending dismissal of Plaintiffs' seventy-eight-page complaint for lack of subject matter jurisdiction based solely on the Rooker-Feldman doctrine. The Report applied this jurisdictional bar uniformly to all claims against all defendants without differentiation or analysis.

4. Plaintiffs timely filed a Motion for Clarification on May 14, 2025, seeking guidance on specific procedural and substantive ambiguities in the Report that prevented effective response through objection or amendment. The clarification request focused on three primary areas: first, why the Report failed to address claims against non-judicial defendants not subject to Rooker-Feldman analysis; second, what specific deficiencies required correction to establish jurisdiction; and third, whether recognized exceptions to Rooker-Feldman might preserve certain claims.

1

5. The Court denied this Motion for Clarification on June 24, 2025, concluding that clarification was unnecessary because the jurisdictional deficiency was not ambiguous and that Plaintiffs understood the basis for dismissal. The Court further stated that it could not act as counsel or rewrite deficient pleadings, even for pro se litigants, and directed Plaintiffs to raise their jurisdictional arguments in objections to the Report.

### III. LEGAL STANDARD FOR RECONSIDERATION

6. A motion for reconsideration may be granted because of the need to correct a clear error of law or fact or to prevent manifest injustice. The standard for clear error of law or fact requires a finding that the error is "plain and indisputable" and "amounts to a complete disregard of the controlling law or the credible evidence in the record." Manifest injustice occurs when the error is "direct, obvious, and observable" and "apparent to the point of being indisputable."

7. Courts recognize that reconsideration serves "a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." Motions for reconsideration serve an essential role in correcting fundamental legal errors that would otherwise result in injustice. The standard is particularly relevant when a court's order contains legal conclusions that disregard established precedent or misapply controlling doctrine in ways that fundamentally prejudice a party's substantive rights.

### IV. ARGUMENTS FOR RECONSIDERATION
#### A. The Court's Order Contains Clear Errors of Law Regarding Pro Se Litigant Rights

8. The June 24 Order commits clear legal error by misapplying established First Circuit precedent regarding courts' obligations to pro se litigants in jurisdictional determinations. Federal courts have consistently recognized that pro se pleadings must be construed liberally and that courts bear special responsibilities to ensure meaningful access to justice for self-represented parties. The Supreme Court has emphasized that while pro se litigants cannot be excused from compliance with procedural requirements, they are entitled to fair notice of deficiencies and reasonable opportunities to cure identified problems.

9. The Court's statement that it "cannot act as counsel for a party or to rewrite deficient pleadings" fundamentally misconstrues the nature of Plaintiffs' clarification request. Plaintiffs did not seek legal advice or pleading assistance but rather sought clarification of ambiguous procedural guidance that the Court itself

2

had previously promised to provide. The March 6, 2025 Order specifically stated that if the Court concluded it lacked jurisdiction, it would "recommend the Court dismiss the matter unless Plaintiffs amend the complaint within the objection period to assert a claim within the Court's jurisdiction" and that "Plaintiffs, therefore, would have an opportunity to address any jurisdictional issues identified by the Court before the matter would be dismissed."

10. This explicit promise of guidance created reasonable expectations that the subsequent Report would identify specific jurisdictional deficiencies requiring correction. When the Report failed to provide such guidance despite the Court's prior commitments, Plaintiffs' request for clarification sought nothing more than fulfillment of the Court's own stated procedural framework. The Court's characterization of this request as seeking impermissible legal assistance constitutes clear error.

**B. The Court's Analysis Disregards Controlling Law on Rooker-Feldman's Narrow Application**

11. The June 24 Order contains clear errors regarding the scope and application of the Rooker-Feldman doctrine that warrant reconsideration. The Order accepts without analysis the Magistrate's blanket application of Rooker-Feldman to all claims against all defendants, despite controlling Supreme Court precedent establishing that the doctrine applies only in narrow circumstances and requires claim-specific analysis.

12. The Supreme Court in Exxon Mobil Corp. v. Saudi Basic Industries Corp. emphasized that Rooker-Feldman is a "narrow doctrine" that applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." The Court stressed that beyond this narrow ground, the doctrine "does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions."

13. Recent circuit court decisions have reinforced this narrow application, requiring courts to conduct claim-by-claim and defendant-by-defendant analysis rather than wholesale dismissal. The First Circuit specifically requires such individualized analysis to determine which claims are barred by Rooker-Feldman and which

are not. The Court's Order fails to acknowledge or apply this controlling precedent, instead accepting a blanket jurisdictional determination that contradicts established law.

### C. The Court's Order Fails to Address Jurisdictional Issues Specific to ADA Claims

14. The June 24 Order commits clear error by failing to recognize the special jurisdictional considerations applicable to ADA claims against state judicial entities established in Tennessee v. Lane. In that landmark decision, the Supreme Court specifically held that Congress validly abrogated state sovereign immunity for Title II ADA claims in the context of access to courts, finding that such claims vindicate fundamental due process rights. This holding creates important jurisdictional nuances that distinguish ADA accommodation claims from typical Rooker-Feldman analysis.

15. Tennessee v. Lane established that when disabled individuals challenge denial of reasonable accommodations in accessing court proceedings, they assert independent federal claims that do not necessarily implicate Rooker-Feldman concerns. The decision recognized that such challenges often involve administrative denials of accommodation rather than judicial determinations, and that the underlying right to court access represents a fundamental constitutional guarantee that Congress may enforce against states.

16. The Court's Order fails to acknowledge or analyze these jurisdictional distinctions, instead treating all claims as subject to identical Rooker-Feldman analysis. This represents clear error in applying controlling Supreme Court precedent to the specific factual and legal circumstances presented by ADA accommodation claims. Such claims often arise from administrative decisions rather than judicial rulings and challenge ongoing conduct rather than finalized judgments, placing them outside the traditional scope of Rooker-Feldman doctrine.

### D. The Court's Order Creates Manifest Injustice by Foreclosing Meaningful Access to Federal Court

17. The June 24 Order creates manifest injustice by effectively foreclosing Plaintiffs' ability to pursue legitimate federal claims through either objection or amendment processes. The Order's refusal to provide clarification, combined with its direction to raise jurisdictional arguments in objections, creates an impossible procedural bind for pro se litigants attempting to navigate complex jurisdictional issues without guidance.

18. The practical effect of the Court's approach denies meaningful access to federal court in violation of fundamental due process principles. When courts identify jurisdictional deficiencies but refuse to specify the nature of those deficiencies or potential curative measures, they effectively foreclose the constitutional right of access to courts. This is particularly problematic in ADA cases where the underlying claims themselves concern denial of court access and procedural accommodations.

19. Federal courts have consistently recognized that jurisdictional determinations must be made with sufficient specificity to permit meaningful response, particularly when dealing with complex doctrines like Rooker-Feldman that require careful factual and legal analysis. The Court's conclusion that the Report contained sufficient guidance contradicts the objective reality that pro se litigants require clear direction to distinguish between claims that may survive jurisdictional scrutiny and those that require amendment.

20. The manifest injustice is compounded by the fact that Plaintiffs' complaint includes numerous defendants who are not judicial entities and claims that do not challenge state court judgments but rather seek prospective relief for ongoing violations. The Court's failure to address these distinctions creates the risk that viable federal claims will be dismissed based on jurisdictional analysis that does not apply to their specific factual circumstances.

### E. The Court's Procedural Analysis Contradicts Its Own Prior Orders

21. The June 24 Order creates manifest injustice by contradicting the Court's own prior procedural commitments and established timeline for addressing jurisdictional issues. The Court's March 6 Order specifically outlined a process whereby the Court would assess jurisdiction and provide guidance on identified deficiencies before requiring amendment. This procedural framework created legitimate expectations that Plaintiffs relied upon in structuring their response to jurisdictional challenges.

22. When the April 8 Report failed to provide the promised guidance despite the Court's explicit commitments, Plaintiffs reasonably sought clarification through proper motion practice. The Court's characterization of this request as seeking impermissible assistance ignores the procedural framework that the Court itself established and that Plaintiffs reasonably relied upon.

23. The procedural inconsistency creates particular prejudice because it leaves Plaintiffs without clear direction on whether to pursue objections, amendments, or both, and what specific issues each approach should address. This uncertainty is especially problematic given the different procedural requirements and timeframes applicable to each option. The Court's refusal to clarify these procedural ambiguities effectively denies the meaningful opportunity to address jurisdictional concerns that the Court previously promised to provide.

## V. CONCLUSION

24. The R&R recommends dismissal of the entire action for lack of subject matter jurisdiction unless Plaintiffs file an amended complaint that states a claim within the Court's jurisdiction, but it does not specify what amendments are required, nor does it address several claims and the defendants that are distinct from the state court judgments at issue , among other things as stated in the motion to clarify. Plaintiff's motion to clarify was filed precisely to seek guidance on these points. But the Court has not provided any clarification or guidance on these critical issues, and as a result, Plaintiff is unable to determine how to proceed with an objection or amendment in a manner consistent with the Court's expectations and the requirements of due process.

25. The Court's June 24, 2025 Order denying Plaintiffs' Motion for Clarification contains clear errors of law and creates manifest injustice that warrant reconsideration. The Order misapplies established precedent regarding pro se litigant rights, disregards controlling authority on Rooker-Feldman's narrow application, and fails to address special jurisdictional considerations applicable to ADA claims against state courts. Most fundamentally, the Order contradicts the Court's own prior procedural commitments and forecloses meaningful access to federal court in violation of due process principles.

26. Reconsideration is necessary to correct these manifest errors and ensure that Plaintiffs receive the fair procedural treatment that federal law requires. The Court should grant this motion and provide the clarification originally requested, specifically addressing which claims and defendants are subject to Rooker-Feldman analysis, what specific deficiencies require correction through amendment, and whether recognized exceptions to the jurisdictional doctrine might preserve any claims.

## VI. RELIEF REQUESTED

27. For the reasons set forth above, Plaintiffs respectfully request that this Court grant this Motion for Reconsideration and:

    a. Reconsider and vacate its June 24, 2025 Order denying Plaintiffs' Motion for Clarification;
    b. Grant Plaintiffs' original Motion for Clarification and provide specific guidance on the jurisdictional issues identified therein;
    c. Clarify which claims and defendants are subject to Rooker-Feldman analysis and which are not;
    d. Identify what specific allegations would need to be included in an amended complaint to establish jurisdiction over claims that may be curable;
    e. Address whether ADA claims for prospective accommodations against state court officials might survive Rooker-Feldman analysis under Tennessee v. Lane and related precedent; and
    f. Grant such other relief as this Court deems just and proper.

Respectfully submitted,
/s/ Andre Bisasor
Andre Bisasor, Pro Se

/s/ Natalie Anderson
Natalie Anderson, Pro Se

Dated: August 29, 2025