UNITED STATES DISTRICT COURT-DISTRICT OF NEW HAMPSHIRE
[via transfer designation to UNITED STATES DISTRICT COURT- DISTRICT OF MAINE]
CIVIL ACTION NO: 1:24-cv-00360
ANDRE BISASOR, et. al. v. NEW HAMPSHIRE JUDICIAL BRANCH, et. al

**PLAINTIFFS' OBJECTION TO THE MAGISTRATE JUDGE'S RULINGS ON PLAINTIFFS' MOTION TO CLARIFY THE MAGISTRATE JUDGE'S 4-8-25 REPORT AND RECOMMENDATION
AND
PLAINTIFFS' OBJECTION TO TO THE MAGISTRATE JUDGE'S RULINGS ON PLAINTIFFS' MOTION TO CLARIFY THE MAGISTRATE JUDGE'S 4-8-25 REPORT AND RECOMMENDATION AND OBJECTION**

1. Plaintiff Andre Bisasor respectfully objects to Magistrate Judge John C. Nivison's June 24, 2025 Order denying the Motion for Clarification of the Report and Recommendation on the original complaint (ECF No. 42) and his September 10, 2025 Order denying the Motion to Reconsider the Motion for Clarification of the Report and Recommendation on the original complaint (ECF No. 50).

2. These rulings contain fundamental legal errors, contradict controlling Supreme Court and First Circuit precedent, and create manifest procedural unfairness requiring de novo reversal under Federal Rule of Civil Procedure 72(b).

3. The Magistrate Judge's Report and Recommendation regarding dismissal of the original complaint (hereinafter simply "R&R" or "Report") was originally issued on April 8, 2025.

4. Note: This document is not intended to be a Motion to Reconsider the Magistrate Judge John C. Nivison's Report and Recommendation on the original complaint, nor is it intended to be an Objection to Magistrate Judge John C. Nivison's Report and Recommendation on the original complaint, in and of itself. It is only intended to be an Objection to Magistrate Judge John C. Nivison's June 24, 2025 Order denying the Motion for Clarification of the Report and Recommendation (ECF No. 42) and his September 10, 2025 Order denying the Motion to Reconsider the Motion to Clarify (ECF No. 50).

5. The magistrate judge has ordered that the deadline to file an objection to the Magistrate's Report and Recommendation is October 1, 2025. This is a separate deadline from today's deadline to file an objection to the Magistrate's order on the motion to clarify the R&R, which by rule is automatically 14 days from the magistrate's 9-14-25 order on the timely filed motion to reconsider the magistrate's ruling on the motion to clarify the R&R, and which lands on today's date of 9-24-25. To the extent that this separate deadline remains applicable after the district court judge issues a ruling on this objection, the plaintiffs intends to meet the separate deadline or deadlines pertaining to the reconsideration and/or objection to the R&R itself. Towards, thar end, and as a concomitant

thereto, the plaintiffs thus hereby further seek clarification on the impact on other deadlines once the district court judge issues a ruling on this objection.

## I.  LEGAL STANDARDS FOR OBJECTIONS TO MAGISTRATE JUDGE RULINGS

6. Under Federal Rule of Civil Procedure 72(b)(3), this Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Thomas v. Arn, 474 U.S. 140, 149 (1985). The de novo standard applies to both substantive recommendations and procedural rulings that affect dispositive matters. Here, the magistrate judge's denial of clarification directly impacts the dispositive jurisdictional ruling, warranting full de novo review.

7. For non-dispositive orders under Rule 72(a), this Court may "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

8. The magistrate judge's characterization of legitimate procedural questions as improper requests for "legal advice" is contrary to established law regarding courts' obligations to pro se civil rights plaintiffs.

9. These standards ensure meaningful appellate review and prevent magistrate judges from insulating erroneous legal conclusions from proper district court oversight. The objections presented here satisfy both standards by identifying specific legal errors and procedural violations requiring correction.

## II. FUNDAMENTAL ERRORS IN THE ROOKER-FELDMAN ANALYSIS
### A. The Magistrate Judge Applied Rooker-Feldman Too Broadly

10. The magistrate judge's wholesale application of Rooker-Feldman to all fourteen defendants and numerous claims directly violates Supreme Court precedent limiting this doctrine to narrow circumstances. In Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005), the Court emphasized that Rooker-Feldman applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

11. The Supreme Court specifically warned against the type of broad application employed here. As the Court explained, beyond this narrow circumstance, the doctrine "does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." Id. Therefore, courts must conduct individualized analysis rather than categorical dismissal.

12. The First Circuit has required claim-specific analysis when applying Rooker-Feldman. In Klimowicz v. Deutsche Bank Nat'l Trust Co., 907 F.3d 61, 64-65 (1st Cir. 2018), the court analyzed individual claims to determine which

2

were barred by Rooker-Feldman and which were not, demonstrating the proper approach. Similarly, in Lance v. Dennis, 546 U.S. 459, 464 (2006), the Supreme Court emphasized that "Rooker-Feldman is a narrow doctrine" requiring careful application.

### B. The Analysis Ignores Critical Defendant Distinctions

13. Most problematically, the R&R fails to explain how private defendant Tyler Technologies, Inc. could possibly be subject to Rooker-Feldman. This private technology company provides court software services but played no role in the actual state court judicial orders/proceedings. Federal claims against Tyler Technologies cannot be "inextricably intertwined" with state court judgments because the company exercises no judicial authority.

14. The complaint alleges that Tyler Technologies denied Plaintiff access to the electronic filing system (paragraph 71). This administrative action, blocking computer access, occurred outside any judicial proceeding and involves no state court judgment to "overturn." The denial of system access constitutes independent tortious conduct entirely separate from judicial rulings.

15. Similarly, claims against the New Hampshire Attorney General's Office and Karen Gorham in her individual capacity involve administrative rather than judicial conduct. The complaint alleges these defendants violated ADA requirements in their administrative roles, not through judicial decision-making. Hence, Rooker-Feldman simply cannot apply to defendants who exercise no judicial authority. The magistrate judge failed to address these legitimate issues in the R&R. If the magistrate judge has clear legitimate grounds to include these under the Rooker-Feldman doctrine, then the magistrate should have clearly delineated grounds for specifically doing so. If the magistrate judge could find any such clear grounds, then the magistrate judge should have stated so and should not have include them in the blanket dismissal under Rooker-Feldman.

16. As a reminder, this is not supposed to be an adjudication on the merits of the claims nor is it an adjudication on whether the plaintiffs have plausibly stated a claim for relief. This is only about or should only be about whether the subject matter jurisdiction of this federal court has been met by all or some of the claims.

### C. The Analysis Fails to Distinguish Judicial from Administrative Conduct

17. The magistrate judge's analysis conflates judicial and administrative functions, ignoring established precedent distinguishing these roles. In Forrester v. White, 484 U.S. 219, 227 (1988), the Supreme Court held that judicial immunity "has not been extended to administrative, legislative, or executive functions." This principle applies equally to Rooker-Feldman analysis.

18. Paragraphs 67-68 of the complaint describe disclosure of confidential medical information to third parties during the ADA accommodation process. This violation of medical privacy constitutes independent administrative misconduct separate from any judicial ruling on accommodation requests. The disclosure itself, not the denial of accommodation, forms the basis for federal claims requiring no review of state court reasoning.

19. Furthermore, paragraphs 208-224 detail discriminatory treatment in public rules committee meetings administered by state officials or state court officials acting in non-judicial capacities. These administrative meetings involve policy-making functions distinct from case adjudication. Federal claims challenging discriminatory conduct in such administrative contexts fall outside Rooker-Feldman's scope because they attack ongoing administrative policies, not judicial determinations.

20. Consequently, the magistrate judge's failure to differentiate between judicial and administrative conduct demonstrates a fundamental misstatement of Rooker-Feldman's limited application. This error alone requires reversal and/or remand for proper analysis.

### III. THE DENIAL OF CLARIFICATION VIOLATES DUE PROCESS AND PROCEDURAL FAIRNESS
#### A. The Court's Prior Representations Created Legitimate Expectations

21. The magistrate judge's refusal to clarify the R&R's jurisdictional analysis directly contradicts the Court's own procedural representations. The March 6, 2025 Order established clear expectations about how jurisdictional review would proceed, promising specific guidance before dismissal.

22. That Order explicitly stated: "if I were to conclude that the Court lacks subject matter jurisdiction over the Plaintiffs' claims, I would recommend the Court dismiss the matter unless Plaintiffs amend the complaint within the objection period to assert a claim within the Court's jurisdiction. Plaintiffs, therefore, would have an opportunity to address any jurisdictional issues identified by the Court before the matter would be dismissed." (ECF No. 37).

23. This representation created reasonable procedural expectations. The Court promised that any jurisdictional analysis would "identify" specific defects allowing Plaintiff to address them before dismissal. When the R&R failed to provide this promised guidance, Plaintiffs properly sought clarification through established motion practice.

24. Moreover, the March 6 Order explained the benefit of magistrate review: "The process by which the Court will assess the jurisdictional issue (1) allows Plaintiffs to avoid the need to file an amended complaint to address the jurisdictional issues if the Court were to conclude that Plaintiffs have stated a claim within the Court's jurisdiction and (2) permits Plaintiffs to address in an amended complaint the jurisdictional concerns that are identified." (ECF No. 37, fn. 1).

4

25. The Court thus committed to identifying specific jurisdictional concerns. The Report's failure to do so, combined with the magistrate judge's refusal to honor these representations, creates manifest unfairness warranting reversal.

### B. The Report Provides Insufficient Guidance for Amendment

26. The magistrate judge's assertion that the Report "sufficiently notified Plaintiffs of the jurisdictional issue" defies objective reality. How does a five-page report that uniformly applies Rooker-Feldman to fourteen defendants and numerous diverse claims provide adequate notice of specific jurisdictional deficiencies?

27. The Report contains no analysis distinguishing between defendants, no examination of different claim types, and no guidance on what amendments might cure jurisdictional problems. Instead, it broadly concludes that all relief would require "overturning" state court orders without explaining how claims against private companies or challenges to administrative policies implicate state court judgments. It also fails to consider that none of the state court judgments were final at the time of the filing of the original complaint in federal court in October 2024, as motions for reconsideration had not yet been filed and no orders on the motions for reconsideration had yet been issued by the state court[1]. Either way, the magistrate judge fails to address any of these legitimate issues. It is as if the magistrate judge has taken the easy way out, by making a blanket dismissal that indiscriminately lumps everything into one pile, without doing the necessary detailed nuanced work required to fairly and properly adjudicate the issue of subject matter jurisdiction as a threshold issue. Note: The plaintiffs have paid their filing fees to have this case entered and reviewed. It is a harm to the plaintiffs for any judge to casually or flippantly dismiss their claims without proper due process or proper cause. The plaintiffs should not be subject to incomplete, unclear, blanket dismissals because they are pro se and are not represented by lawyers. If lawyers had filed this case, it is arguable that such flippant incomplete lackadaisical approach would not be utilized but instead a more careful judicial reasoned meticulous approach would be utilized. The plaintiffs deserve no less treatment especially because they are pro se litigants, and it's our understanding that we are entitled to some degree of leniency in procedural matters (i.e., the Supreme Court has held that pro se pleadings should be held to "less stringent standards than formal pleadings drafted by lawyers" (Haines v. Kerner, 404 U.S. 519, 520 (1972)).).

28. This approach violates basic due process principles. Federal courts cannot identify jurisdictional deficiencies in conclusory fashion, refuse to specify their nature, and then dismiss cases when plaintiffs cannot cure unspecified

---

[1] Furthermore, even now, the state court judgments are still technically not final as they have been appealed to the US supreme court.

problems. Such an approach transforms jurisdictional analysis from a tool ensuring proper forum selection into a barrier preventing substantive review of federal claims.

29. The procedural unfairness is particularly acute because the underlying claims allege denial of court access to disabled individuals. Dismissing such claims through jurisdictional analysis that itself denies meaningful access to federal court creates perverse circularity that federal civil rights laws exist to prevent.

## IV. THE MAGISTRATE JUDGE MISCHARACTERIZED LEGITIMATE PROCEDURAL QUESTIONS
### A. Courts Have Established Obligations to Pro Se Civil Rights Plaintiffs

30. The magistrate judge's characterization of the clarification request as seeking improper "legal advice" misapprehends established precedent regarding courts' obligations to pro se litigants. The Supreme Court has consistently required liberal construction of pro se pleadings and reasonable accommodation of procedural needs.

31. In Haines v. Kerner, 404 U.S. 519, 520 (1972), the Court established that pro se pleadings must be "held to less stringent standards than formal pleadings drafted by lawyers" and liberally construed to protect substantive rights. This principle extends to procedural matters, particularly when fundamental constitutional rights are at stake.

32. The First Circuit has emphasized these obligations repeatedly. In Erickson v. Pardus, 551 U.S. 89, 94 (2007), the Supreme Court reaffirmed that courts must liberally construe pro se complaints. In Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), the First Circuit emphasized courts' duty to provide clear guidance to pro se litigants navigating complex procedural requirements.

33. These precedents recognize that pro se litigants, particularly those pursuing civil rights claims, require reasonable procedural accommodation to ensure meaningful access to federal courts. Courts routinely provide such guidance without "acting as counsel" for parties.

### B. The Questions Were Legitimate Procedural Inquiries

34. The questions Plaintiffs raised were not requests for legal advice but legitimate procedural inquiries about how to comply with court requirements after receiving inadequate guidance. Specifically, Plaintiffs sought clarification on:

   a. Which specific claims are subject to Rooker-Feldman analysis versus those involving independent federal violations

   b. Which defendants fall outside the doctrine's scope due to their non-judicial roles

   c. What specific amendments would cure identified jurisdictional defects

   d. Whether ADA court access claims receive special treatment under Tennessee v. Lane, 541 U.S. 509 (2004)

35. These are precisely the types of procedural questions courts routinely address to ensure pro se litigants can meaningfully participate in federal litigation. The magistrate judge's refusal to address them while characterizing them as improper creates a catch-22: Plaintiffs cannot draft effective pleadings without understanding the Court's jurisdictional analysis, but they cannot seek such understanding without being accused of seeking improper advice.

36. Furthermore, the distinction between "legal advice" and "procedural guidance" is well-established. Courts may not provide strategic legal advice or advocate for parties, but they routinely clarify procedural requirements and explain the basis for their rulings. The clarification motion sought the latter, not the former.

## V. SPECIAL CONSIDERATIONS FOR ADA COURT ACCESS CLAIMS
### A. Tennessee v. Lane Requires Enhanced Analysis

37. The magistrate judge's treatment of ADA claims demonstrates fundamental legal error. While the Report acknowledges Tennessee v. Lane, 541 U.S. 509 (2004), it fails to analyze how this Supreme Court precedent affects jurisdictional analysis for disability discrimination claims against state courts.

38. In Tennessee v. Lane, the Court recognized Congress's authority to abrogate state sovereign immunity for Title II ADA claims involving court access. The Court emphasized that such claims vindicate fundamental due process rights because barriers to court access for disabled individuals violate core constitutional principles. As the Court explained, "The unequal treatment of disabled persons in the administration of judicial services has a long history, and has persisted despite several legislative efforts to remedy the problem." 541 U.S. at 531.

39. Critically, Tennessee v. Lane established that accommodation requests typically involve "administrative decisions" by court personnel that are "distinguishable from the decision of an executive agency." 541 U.S. at 513. This distinction proves crucial here because it demonstrates that ADA accommodation processes often involve administrative rather than judicial conduct.

40. The complaint alleges that court officials denied accommodation requests through administrative processes rather than judicial rulings. Paragraphs 100-113 describe how the New Hampshire Supreme Court "sought no information, no interactive process, no inquiry, no clarification" regarding ADA requests. This administrative denial of the interactive process required by federal law constitutes independent misconduct that implicates no state court judgment requiring "overturning."

### B. Prospective Relief Claims May Proceed Under Ex Parte Young

41. Many ADA claims here seek prospective injunctive relief to bring state courts into compliance with federal accessibility requirements. Under Ex parte Young, 209 U.S. 123 (1908), such prospective relief claims against state officials to prevent ongoing federal law violations may proceed despite sovereign immunity concerns.

42. The First Circuit has recognized this principle in disability contexts. In Buchanan v. Maine, 469 F.3d 158, 170-71 (1st Cir. 2006), the court analyzed ADA claims seeking prospective relief and applied proper jurisdictional analysis rather than categorical dismissal.

43. The magistrate judge's analysis contains no examination of whether some claims seek prospective relief rather than review of past judgments. This omission constitutes legal error requiring correction, particularly given the Supreme Court's emphasis in Tennessee v. Lane on ensuring meaningful court access for disabled individuals.

## VI. THE SEPTEMBER 10, 2025 RECONSIDERATION ORDER COMPOUNDS THE ERRORS
### A. The Order Misapplies Reconsideration Standards

44. The magistrate judge's September 10, 2025 denial of reconsideration applies legal standards mechanically without addressing the substance of Plaintiffs' arguments regarding legal errors in the initial clarification ruling. The Order states that Plaintiffs "reiterate the arguments that they made in the motion to clarify" and have not demonstrated "manifest error of law."

45. This conclusion ignores the specific legal authorities Plaintiffs cited showing that the clarification denial misapplied controlling precedent. When a party identifies specific Supreme Court decisions contradicting a court's legal analysis, as Plaintiffs did regarding Rooker-Feldman's narrow application; such arguments cannot be dismissed as mere "reiteration."

46. In Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006), the First Circuit established that reconsideration is appropriate when "the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." Here, Plaintiffs demonstrated manifest error by showing how the clarification denial contradicted Supreme Court precedent in Exxon Mobil and First Circuit precedent requiring claim-specific Rooker-Feldman analysis.

47. The magistrate judge's failure to engage with these authorities while mechanically denying reconsideration constitutes additional legal error requiring correction.

### B. The Order Creates Impossible Procedural Binds

48. Most significantly, the reconsideration order mischaracterizes the nature of clarification by suggesting that all jurisdictional arguments should be raised in objections rather than addressed through prior clarification. This approach creates impossible procedural constraints: Plaintiffs cannot draft effective objections without understanding which specific claims and defendants the Court believes are subject to jurisdictional scrutiny.

49. The magistrate judge's approach effectively forecloses meaningful participation in the objection process. How can pro se civil rights plaintiffs object to inadequate legal analysis when the Court refuses to clarify the basis for its conclusions? This circular reasoning violates due process and established precedent requiring meaningful opportunity to be heard.

## VII. THE ANALYSIS IGNORES FUNDAMENTAL FACTUAL ALLEGATIONS
### A. Claims Against Tyler Technologies Cannot Implicate Rooker-Feldman

50. The magistrate judge's failure to address Tyler Technologies separately demonstrates the superficial nature of his jurisdictional analysis. Tyler Technologies is a private corporation that provides electronic filing services to courts. It exercises no judicial authority and made no judicial determinations.

51. Paragraph 71 of the complaint alleges: "After September 6, 2024, therefore the brief due date passed without Plaintiff filing a brief or being able to file a brief regardless of whether the brief was completed or not" because "the plaintiff attempted to retrieve records from the courts electronic records system for filings and cases for the NH judicial branch, but was stripped of access to the systems case records."

52. This allegation describes pure administrative conduct by a private company. Tyler Technologies' decision to block system access cannot be "inextricably intertwined" with state court judgments because the company made no judicial determinations. The blocking occurred for technical or administrative reasons entirely separate from judicial decision-making.

53. Consequently, claims against Tyler Technologies necessarily fall outside Rooker-Feldman's scope. The magistrate judge's failure to recognize this basic distinction demonstrates fundamental misunderstanding of the doctrine's limited application.

### B. Administrative Violations Create Independent Federal Claims

54. The complaint details numerous administrative violations that create independent federal claims unrelated to judicial determinations. For example, paragraphs 67-68 describe how Justice Countway "issued an order that restyled plaintiffs medical documentation that he submitted, as a renewed request for an extension of time, and then she

presented Plaintiff with a Hobsons choice either (1) withdraw his ADA request entirely, or (2) agree to have his confidential medical information disclosed to third parties."

55. This administrative handling of medical information violates federal confidentiality requirements under the ADA. The violation stems from administrative procedures for processing accommodation requests, not from judicial determinations about the underlying appeals. Hence, federal claims challenging these confidentiality violations require no review of state court judicial reasoning.

56. Similarly, the complaint alleges discriminatory treatment in rules committee meetings where court officials act in administrative rather than judicial capacities. These administrative meetings involve policy-making functions distinct from case adjudication. Federal claims challenging discriminatory conduct in such contexts attack ongoing administrative policies, not judicial determinations.

57. The magistrate judge's failure to analyze these critical distinctions demonstrates cursory review inconsistent with the individualized analysis required by controlling precedent.

## VIII. FIRST CIRCUIT PRECEDENT REQUIRES CLAIM-SPECIFIC ANALYSIS
### A. Badillo-Santiago Demonstrates the Proper Approach

58. The First Circuit's decision in Badillo-Santiago v. Naveira-Merly, 378 F.3d 1, 6-7 (1st Cir. 2004), illustrates the proper approach to Rooker-Feldman analysis in disability discrimination cases. Rather than applying the doctrine categorically, the court conducted detailed analysis of which specific claims might survive jurisdictional scrutiny.

59. The Badillo-Santiago court noted that "the Rooker-Feldman doctrine and preclusion concepts likely barred a federal Title II ADA reasonable accommodation suit when the state supreme court had considered and rejected the claim while adjudicating the plaintiff's underlying state criminal case." Id. at 6-7 (emphasis added). The court's use of "likely" demonstrates the careful, individualized analysis required.

60. Critically, the court recognized that some ADA claims might survive even when others are barred. This nuanced approach contrasts sharply with the magistrate judge's wholesale dismissal of all claims against all defendants without differentiation.

61. The magistrate judge's failure to conduct similar individualized analysis violates established First Circuit precedent and requires reversal.

## B. The Circuit Requires Narrow Application

62. The First Circuit has emphasized Rooker-Feldman's narrow scope. In Davison v. Gov't of Puerto Rico-Puerto Rico Firefighters Corps., 471 F.3d 220, 223 (1st Cir. 2006), the court explained that "the proper forum for challenging an unlawful state court ruling" is typically the state appellate system followed by Supreme Court review, but noted exceptions for certain federal claims.

63. More recently, in Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 24 (1st Cir. 2005), the First Circuit applied the Supreme Court's guidance in Exxon Mobil to narrow Rooker-Feldman's application. The court emphasized that the doctrine applies only in "limited circumstances" and "does not otherwise override or supplant preclusion doctrine."

64. These precedents establish that First Circuit courts must conduct careful, claim-specific analysis rather than categorical application of Rooker-Feldman. The magistrate judge's broad application violates this established approach.

## IX. THE BROADER CONSTITUTIONAL CONTEXT SUPPORTS FEDERAL JURISDICTION
### A. Civil Rights Claims Deserve Heightened Protection

65. The Supreme Court has consistently recognized that federal civil rights claims deserve careful protection rather than dismissal on technical jurisdictional grounds. In Monroe v. Pape, 365 U.S. 167, 180 (1961), the Court explained that Section 1983 provides "a remedy against state action that is contrary to the Federal Constitution."

66. This principle applies with particular force to disability discrimination claims. In Tennessee v. Lane, the Court emphasized that ensuring court access for disabled individuals vindicates fundamental constitutional principles. The Court noted that "the historical experience that Title II was designed to address ... included ... systematic deprivations of fundamental rights."

67. These precedents counsel against the type of broad jurisdictional dismissal the magistrate judge recommended without adequate individualized analysis. Federal civil rights laws exist precisely to provide federal forum for claims that state courts may be unwilling or unable to address adequately.

### B. The ADA Creates Independent Federal Rights

68. Title II of the ADA creates independent federal rights that do not depend on state court determinations. As the Supreme Court explained in Tennessee v. Lane, Congress validly exercised its enforcement authority under Section 5 of the Fourteenth Amendment when enacting disability access requirements for courts.

69. The ADA's accommodation requirements apply to state courts in their administrative capacity, not their judicial capacity. When state courts fail to provide required accommodations in their administrative processes, they violate independent federal law regardless of their judicial determinations in underlying cases.

70. Consequently, ADA claims challenging administrative failures to accommodate create federal causes of action that exist independently of state court judicial determinations. The magistrate judge's failure to recognize this fundamental distinction demonstrates legal error requiring correction.

## X. THE CURRENT RULINGS CREATE MANIFEST INJUSTICE
### A. Pro Se Civil Rights Plaintiffs Face Unique Hardships

71. The combined effect of the magistrate judge's rulings creates manifest injustice by effectively foreclosing federal review of substantial civil rights claims through jurisdictional analysis that contradicts controlling precedent. Pro se plaintiffs with disabilities face particular hardships in navigating complex federal litigation without adequate guidance.

72. The Supreme Court has recognized these challenges. In Lewis v. Casey, 518 U.S. 343, 354 (1996), the Court acknowledged that meaningful access to courts requires not just theoretical access but practical ability to present claims effectively. This principle applies with special force to disability discrimination claims where the underlying disability may itself impair litigation capacity.

73. Here, the magistrate judge's refusal to provide promised guidance while dismissing claims on complex jurisdictional grounds effectively denies meaningful court access to disabled civil rights plaintiffs. This result contradicts the very purposes of federal disability rights legislation.

### B. The Jurisdictional Analysis Lacks Required Precision

74. The magistrate judge's broad jurisdictional analysis fails to meet the precision required for dismissing federal civil rights claims. In Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 95 (1998), the Supreme Court emphasized that jurisdictional determinations must be based on careful legal analysis rather than broad generalizations.

75. Here, the magistrate judge applied Rooker-Feldman categorically without the individualized analysis required by controlling precedent. This approach transforms a narrow jurisdictional doctrine into a broad barrier preventing substantive review of federal claims.

76. Federal courts have particular responsibility to ensure that jurisdictional doctrines do not become devices for avoiding difficult civil rights cases. The magistrate judge's approach effectively immunizes state court administrative conduct from federal review, contrary to congressional intent in enacting federal disability rights laws.

## XI. SPECIFIC RELIEF REQUIRED
### A. This Court Must Conduct De Novo Review

77. This Court should exercise complete de novo review of the magistrate judge's jurisdictional analysis. The Report's legal conclusions receive no deference, and this Court must independently evaluate whether Rooker-Feldman applies to each claim against each defendant.

78. Such review must include:

    a. Individualized analysis of each defendant's role and authority

    b. Distinction between judicial and administrative conduct

    c. Evaluation of which claims seek prospective versus retrospective relief

    d. Assessment of ADA claims under Tennessee v. Lane framework

    e. Consideration of Ex parte Young exception for ongoing violations

### B. Specific Guidance Must Be Provided

79. Should this Court identify any jurisdictional deficiencies, it must provide the specific guidance promised in the March 6, 2025 Order. Such guidance must explain:

    a. Which specific claims are subject to jurisdictional challenge

    b. What amendments would cure identified defects

    c. Whether certain defendants fall outside jurisdictional constraints

    d. How ADA administrative claims differ from judicial challenges

    e. What prospective relief remains permissible

### C. The Case Should Proceed on Valid Claims

80. Many claims in the complaint clearly fall outside Rooker-Feldman's narrow scope and should proceed. These include:

    a. All claims against Tyler Technologies as a private entity

    b. ADA administrative violations unrelated to judicial determinations

    c. Prospective relief claims under Ex parte Young

    d. Claims challenging ongoing discriminatory policies

    e. Constitutional violations in administrative processes

13

## XII. CONCLUSION

81. The magistrate judge's rulings rest on fundamental legal errors that require reversal. His categorical application of Rooker-Feldman contradicts Supreme Court precedent requiring narrow, individualized analysis. His refusal to provide promised procedural guidance violates due process and established precedent regarding pro se civil rights plaintiffs. His mischaracterization of legitimate procedural questions as improper advice-seeking creates impossible procedural constraints.

82. Most fundamentally, his analysis treats Rooker-Feldman as a broad immunity doctrine rather than the narrow jurisdictional rule the Supreme Court established. This approach effectively forecloses federal review of substantial disability discrimination claims without adequate legal justification.

83. Federal civil rights laws exist to ensure equal access to justice for all Americans, including those with disabilities. These laws cannot fulfill their constitutional purpose if federal courts apply jurisdictional barriers so broadly that legitimate civil rights claims never receive substantive review. This case presents an opportunity to ensure that Rooker-Feldman serves its intended narrow purpose rather than becoming a broad shield against federal civil rights enforcement.

84. For the foregoing reasons, Plaintiffs respectfully request that this Court sustain these objections, reject the magistrate judge's recommendations and orders, and remand for proper individualized analysis consistent with controlling precedent. The interests of justice, the requirements of federal law, and the constitutional principles underlying federal civil rights legislation all support this result.

85. Plaintiffs also seek clarification by the district court judge on the impact on the related timelines for filing a motion to reconsider the magistrate's ruling on the R&R and also for filing an objection to the magistrate's ruling on the R&R, which we understand to be two different deadlines, if and only if a motion to reconsider the magistrate' ruling on the R&R is timely filed. Plaintiffs also seek clarification of the impact of the district court judge's ruling on this objection, especially if the magistrate's ruling on the motion to clarify the R&R and the motion to reconsider the motion to clarify the R&R is reversed or revised/modified in any way, in whole or in part.

Respectfully submitted,<br>
/s/ Andre Bisasor<br>
Andre Bisasor

Dated: September 25, 2025

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was/will be served upon parties of record via the ECF system.

/s/ Andre Bisasor
Andre Bisasor

Case 1:24-cv-00360-NT-JCN　　Document 51　　Filed 09/24/25　　Page 15 of 15